WILLIAM G. KRICK *v.* FARMERS AND MERCHANTS BANK OF BOSWELL, ADMINISTRATOR, ET AL.

[Nos. 1270A257, 171A22. Filed January 25, 1972. Rehearing denied February 29, 1972. Transfer denied July 17, 1972.]

*Stephen C. Bower,* of Kentland, for appellant.

*Thomas R. McConnell,* of Fowler, for appellee Bank, *Carl M. Franceschini,* of LaPorte, for appellees Louis and Margaret Krick, *Alonzo E. Deckard,* of Danville, for appellee Margaret Krick, *Karl M. Jacobs,* of Fowler, for appellees, Henry W. Krick, Emma Budreau, Anthony G. Krick, Bertha Clara Siefers, *Charles M. Ailes,* of Fowler, for appellee Bertha Clara Siefers, *R. Dennis Hoover,* of Valparaiso, for appellee Anthony G. Krick.

BUCHANAN, J.—*STATEMENT OF THE CASE AND FACTS*—Two causes of action, one a will contest suit (171-A22) and the other a decedent's estate proceeding (1270A257), are consolidated for appeal as they raise identical issues. William G. Krick (William), appellant in both causes (a defendant in the will contest suit and petitioner in the estate proceeding), seeks to set aside compromise of the will contest in both actions.

Elizabeth Krick (Elizabeth) died testate on September 6, 1961. At the time of her death she was 92 years of age and domiciled in Benton County, Indiana. She left surviving her the following seven sons and four daughters: Henry Krick, Frank Krick, Louis Krick, Charles Krick, Edmund Krick, Anthony Krick, William Krick, Emma Budreau, Margaret Krick, Martha Krick, and Bertha Siefers (hereinafter

referred to by their first names). Emma died after Elizabeth. All of the sons and daughters, except William, and the heirs of Emma and Matthias (a predeceased son) are the appellees.

Elizabeth's last will and testament, dated November 30, 1958, was duly probated in the Circuit Court of Benton County, Indiana, on September 13, 1961. Louis, her son, as directed in her will, was appointed Executor of the estate. He served as Executor until his death on March 19, 1968. On April 5, 1968, the Farmers and Merchants Bank of Boswell, Indiana (the Bank), one of the appellees in this cause, was appointed Administrator with the Will Annexed. The Bank is now, and has been since its appointment, acting in such capacity.

The assets left by Elizabeth consisted of:

| | |
|---|---:|
| Real estate (93.8 acres) | $32,830.00 |
| Household goods | 125.00 |
| Implements and crops (farm) | 2,342.10 |
| Cash (bank accounts) | 6,165.49 |
| Total | $41,462.59 |

Elizabeth's will gave the bulk of her estate, including all of the real estate, to her son Louis and her daughter Margaret. The residue of her estate was bequeathed to the remaining sons and daughters, share and share alike.

On February 27, 1962, Henry, Anthony, Emma, and Bertha filed a Complaint in the Benton Circuit Court to contest Elizabeth's will. The grounds alleged in the Complaint were undue execution of the will, unsoundness of mind of the decedent at the time the will was executed, and that the will was executed under duress and fraud. All interested parties, including the appellant William as defendant, were duly notified of the filing of the action as provided by law and were served with summons. The will contest, however, was filed as a separate civil action in the Benton Circuit Court—and so docketed.

At the same time the will contest was filed, Bertha was asserting a claim against the estate for advancements and money spent on behalf of Elizabeth in the approximate amount of $8,000.00.

On February 5, 1964, the parties to the will contest suit advised the court that the will contest had been compromised and settled. The exact terms of the compromise are not clear, but it appears from the record that Louis as Executor paid Bertha's claim in the amount of $6,000.00, and out of this sum she paid the other contestants $2,000.00. The terms of the compromise were not reduced to writing or made known to the court at the time the compromise was approved. However, the records show that all of the parties, including William, were represented by counsel and all joined in requesting the court to approve the compromise and dismiss the cause of action with prejudice. The court accepted the recommendation of the parties and entered an Order dismissing the contest suit with prejudice. Omitting formal parts, the last two paragraphs of the court's order on February 5, 1964 read as follows:

> "Comes now the Plaintiffs and Defendants *by counsel* and respectfully shows the Court that this cause has been compromised and now the Plaintiffs move the Court to dismiss this cause with prejudice.
>
> "And now the Court being duly advised in the premises ORDERS this cause dismissed *with prejudice* to the Plaintiffs. Costs to the Defendants." (Emphasis supplied.)

It is not clear when William first discovered that $2,000.00 of the $6,000.00 paid to Bertha was used to settle the will contest. However, on or before September 2, 1964, William became aware of the nature of the settlement, *i.e.,* that $2,000.00 of estate money had been paid to contestors Henry, Anthony, and Emma, because on that date William filed a Motion asking that the Order approving the compromise settlement of the will contest be set aside. Grounds for the Motion were that he had no knowledge of the terms of the

compromise and that the same was made in violation of the provisions of IC 29-1-9-1 *et seq.*, Ind. Ann. Stat. § 7-301 *et seq.* (Burns 1953), which requires that a will compromise be reduced to writing. The Motion was set for hearing by the court on January 7, 1965, and following such hearing the court denied the Motion. At this point William did not file a Motion for a New Trial or otherwise take steps to perfect an appeal.

In April of 1968, three and one-half years later, the Benton Circuit Court was informed that Louis had died and the Bank was appointed Administrator with the Will Annexed. In April of 1970 the Bank filed its Final Report. William then timely filed Objections to the Bank's Final Report containing substantially the same allegations as those in his Motion of September 2, 1964 to set aside the compromise of the will contest action.

Again he argued that the compromise violated IC 29-1-9-2, § 7-302, *supra,* and that $2,000.00 of the $6,000.00 originally paid to Bertha in settlement of the will contest suit was wrongfully taken from the residue of the estate and paid to the contestants of the will, thereby reducing his share as a residuary legatee.

Realizing its error in failing to comply with IC 29-1-9-1 *et seq.*, § 7-301 *et seq.*, *supra,* requiring a compromise to be in writing, and for allowing estate money to be used in settlement of the will contest suit, the Benton Circuit Court sustained William's Objections to the Final Report and ordered that the fees of the Administrator and attorneys be determined, and that the $2,000.00 received by the contestants be surcharged against them, reducing their distributive shares by $500.00 apiece. Consequently, none of the money used in the compromise of the will contest came from the decedent's estate.

The Bank subsequently filed a Supplemental Final Report showing that the corrections ordered by the court, and re-

quested by William, had been made. On June 16, 1970, the court approved the Supplemental Final Report of the Bank and ordered the Bank to make distribution accordingly.

Apparently William was not satisfied with the Order of the court sustaining his Objections because on August 5, 1970, he filed a Motion to Correct Errors, alleging for the third time substantially the same errors as appeared in his Motion to set aside the will contest compromise and his Objections to the Bank's Final Report. Again he questioned (1) the action of the court in allowing the attorney for the Bank an additional attorney's fee of $1,000.00 for his services; (2) the judgment of the court made on February 5, 1964 approving the compromise settlement of the will contest and dismissing the contestants' Complaint with prejudice, on the ground that the Order was null and void because no formal petition setting forth the terms of the compromise was presented to the court, and no formal finding was made by the court that such compromise was fair; (3) and that the court acknowledged that estate funds were used to compromise the will contest.

Upon receipt of the Motion to Correct Errors, Judge Everett L. West of the Benton Circuit Court sent this letter to Stephen Bower, William's attorney of record:

"Dear Steve:

I have filed your Motion to Correct Errors in Krick Estate, but I am not filing the Motion under Rule 60B6 in Cause No. C62-20 for the following reasons. Before this Court and in the presence of T. R. McConnell, you, on behalf [*sic*] your client, William G. Krick, agreed that the proper way to adjust the $2,000 was in a formula arrived at through yourself and Mr. McConnell. Any attempt on your part at this moment to renew a lawsuit which was dismissed five years ago and in which you were counsel, amounts to a fraud upon this Court and clearly a case of misrepresentation.

Sincerely,
Everett L. West"

The Motion to Correct Errors was subsequently overruled. This appeal, taken in both cases, presents identical issues.

## ISSUES

*ONE.* May a party to a final decision compromising a will contest during the course of an estate proceeding elect not to then perfect an appeal and thereafter appeal from an adverse ruling on objections to the personal representative's final report raising the same issues?

*TWO.* Is this appeal so lacking in merit that Rule AP. 15 (F) and (G) must be invoked assessing damages and costs against William (the appellant)?

## DECISION

*ISSUE ONE.* It is our opinion this appeal by William is not timely and he should have appealed from the trial court's decision compromising the will contest action.

To determine when an interested person must appeal a decision made by a court having probate jurisdiction during the course of administering a decedent's estate, necessarily leads to a consideration of the nature of an estate proceeding.

IC 29-1-7-2, Ind. Ann. Stat. § 7-102 (Burns 1953) is the key:

> "CHARACTER OF PROCEEDINGS—The probate of a will and the administration of the estate shall be considered *one proceeding* for the purposes of jurisdiction, and said entire proceeding and the administration of a decedent's estate *is a proceeding in rem.*" (Emphasis supplied.)

This provision has been interpreted to mean that once the proper court obtains jurisdiction over an estate, any other proceedings concerning the estate are a part of the original proceedings. *Essex Wire Corp.* v. *Grant Circuit Court* (1967), 248 Ind. 625, 230 N. E. 2d 436; *Wilson* v. *Howard Circuit Court* (1957), 237 Ind. 263, 145 N. E. 2d 4. The administration of a decedent's estate is viewed as a single proceeding in rem, even though during the course of this administrative proceeding collateral proceedings

may occur which are adversary in nature and result in separate decisions finally adjudicating the rights of interested persons. Will contests, claims of creditors, actions for possession of real estate or intermeddling with estate assets, to name a few, are examples of collateral civil actions which may be tried by a court having probate jurisdiction. From a final determination of the rights of the parties in such ancillary proceedings an aggrieved party may appeal. *Hawes* v. *Kepley* (1902), 28 Ind. App. 306, 62 N. E. 720.

Some confusion seems to surround the "one proceeding . . . in rem" concept. This may be so because courts having probate jurisdiction treat collateral or ancillary proceedings separately to the extent that a special docket is provided for such proceedings with separate cause numbers assigned and process issued accordingly. The two cases consolidated here on appeal really consist of only one collateral civil action to the estate proceeding. William's brief refers to "this separate civil suit" and obviously treated it as an independent and separate cause of action. This is harmless error, however, as the court on its own motion or any interested person may transfer a case to its proper division. *State ex rel. Townsend* v. *Tipton Circuit Court* (1961), 242 Ind. 226, 177 N. E. 2d 590.

The significance of the distinction between independent civil causes of action and collateral proceedings arising at different stages in the administration of an estate is even more meaningful in determining when an appeal *must* be perfected. Since the enactment of the Probate Code in 1953, we find no Indiana cases specifically holding that a party to a collateral action, such as a will contest, may elect not to appeal a final decision in such cause and thereafter file objections to the personal representative's final report grounded on errors in the collateral action long since decided. The cases and the Probate Code provision relating to appeals, *infra,* imply that failure to perfect an appeal at the time of

a final decision in a collateral action during the course of the administration of an estate is fatal. This was true prior to the adoption of the Probate Code. *Goheen, Exr.* v. *Stirlen* (1923), 193 Ind. 246, 139 N. E. 359.

Collateral proceedings arising out of the probate of a decedent's estate have been held to be appealable only if they are final judgments or an interlocutory order specifically made appealable. *Greathouse* v. *McKinney* (1942), 220 Ind. 462, 44 N. E. 2d 344. To be appealable as a final judgment, an order or judgment must be one which finally determines the rights of the parties involved; or, if it does not dispose of all the issues, it will still be appealable if it disposes of some distinct and definite branch of the proceedings leaving no further question for future determination by the court as to that particular issue. *Seaney* v. *Ayres* (1958), 238 Ind. 493, 151 N. E. 2d 295; *Greathouse* v. *McKinney, supra; Kruzick* v. *Pelkey* (1962), 134 Ind. App. 569, 190 N. E. 2d 201.

Appeals are permitted from judgments in actions to contest the validity of a will or to resist the probate thereof. *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106. In addition, our Probate Code provides that such an appeal may be taken as appeals are taken in civil causes. IC 29-1-1-22, Ind. Ann. Stat. § 6-122 (Burns 1953) provides:

> "APPEALS—*Any person* considering himself *aggrieved by any decision of a court having probate jurisdiction* in proceedings under this code *may prosecute an appeal* to the court having jurisdiction of such appeal. Such appeal shall be taken as appeals are taken in civil causes. Executors, administrators, guardians and fiduciaries may have a stay of proceedings without bond." (Emphasis supplied.)

Hence, the final adjudication of a will contest suit is an appealable action under IC 29-1-1-22, § 6-122, *supra*, and such appeal is governed by the Rules of Civil Procedure applicable to ordinary civil causes.

We must conclude that a compromise of a will contest is an adversary proceeding in which the court finally determines the rights of the parties and appeal must be taken from such final decision. This is true even though the administration of an estate is essentially one proceeding in rem. The collateral proceedings which arise out of the administration of the estate require finality. Otherwise, the parties against whom a judgment has been rendered in these collateral proceedings may unduly lengthen the administration of estates by waiting until the end of the estate proceedings and then file objections to the final report based on errors which may have occurred years previously in a collateral action. The early and speedy administration of estates is militated against when heirs or other adverse parties can wage guerrilla warfare against the estate and rightful heirs by losing one or more unappealed from collateral actions during the course of administration of an estate and then raise the same issues in objections to the final report. By thus lying in wait unnecessary expense is created for all concerned, the wishes of the decedent are frustrated, estate assets are dissipated, and the public interest in shortening the period of administration of decedents' estates is thwarted.

We think it consistent with the concept of one proceeding in rem that collateral proceedings be finally determined and appeals taken as in other civil causes. The implication of § 6-122, *supra,* is that, while a party "may prosecute an appeal," failure to do so precludes any later appeal from a "decision" finally determining the rights of the parties in any collateral proceeding.

The record and evidence in this case reveal that not only was William a party-defendant to the will contest, but that he also had notice of the compromise through his attorney of record who was present at the hearing on February 5, 1964, when all interested parties joined in requesting the Benton Circuit Court to dismiss the will contest suit because it had

been compromised. The Entry of the Benton Circuit Court dated February 5, 1964, was a final judgment determining the rights of the parties to the will contest and declared: "Comes now the Plaintiffs and Defendants by counsel. . . ." William has not alleged this Entry was secured by fraud. Consequently, he is estopped to assert that he had no notice of the terms of the compromise on February 5, 1964. Notice to the attorney is notice to the client. *In the Matter of Attempted Annexation of Territory to the City of Muncie, Indiana* (1971), 150 Ind. App. 245; *Blessing* v. *Dodds* (1876), 53 Ind. 95; *Kuhn* v. *Indiana Ice & Fuel Co.* (1937), 104 Ind. App. 387, 11 N. E. 2d 508. Ample opportunity was given to William to raise any issue relating to the will contest, including the failure of the court to require the compromise of the will contest to be reduced to writing and that estate funds were used indirectly to pay the will contestors in settlement and compromise. Such lack of diligence continued when William belatedly filed a Motion to reinstate the will contest suit on September 2, 1964, approximately six months after the court's judgment. Nor did he make any attempt to appeal the overruling of this Motion when it was denied by the court on January 7, 1965. Because this so-called Motion to reinstate the will contest was abortive, we cite it only as an indication of William's failure to pursue remedies available to him promptly and with diligence.

Having failed to appeal the court's Entry of February 5, 1964, William then waited for five and one-half years before filing Objections to the Final Report of the Bank, alleging that the judgment setting aside the will contest was void because it violated IC 29-1-9-2, Ind. Ann. Stat. § 7-302, *supra*, which requires that the compromise of a will contest suit be reduced to writing for approval by the court. William apparently considers such a judgment to be void rather than voidable. While it may be erroneous, it is only void if the court which rendered it lacked jurisdiction of the subject matter or of the parties. *City of Huntington* v. *North-*

*ern Indiana Power Co.* (1937), 211 Ind. 502, 5 N. E. 2d 889. Failure to follow statutory requirements of procedures when the court has jurisdiction of the subject matter and the parties is not void, but only voidable. *Smith* v. *Hesse* (1884), 91 Ind. 424. In order to take advantage of a voidable judgment, the party adversely affected must timely file an appeal. The February 5, 1964 Entry was erroneous and voidable, and William's remedy was to perfect an appeal from that judgment.

The trial judge was understandably disturbed when he received William's Motion to Correct Errors *after* he had sustained William's Objections to the Bank's Final Report so that no estate money was used for purposes of settlement of the compromise of the will contest. William used the same timeworn arguments for the third time as error in his Motion to Correct Errors, which the trial court properly overruled, indicating in his letter to William's counsel that this amounted to a fraud on the court. With this we agree.

William raises several minor issues in his Motion to Correct Errors. Having failed to argue these issues in his brief, any error predicated thereon is hereby waived pursuant to Rule AP. 8.3 (A) (7).

*ISSUE TWO.* It is our opinion that this appeal is without merit and that Rule AP. 15 (F) should be invoked to assess damages against William as appellant herein.

Rule AP. 15 (F) and (G) provide as follows:

"(F) DAMAGES AGAINST APPELLANT. If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent [10%] upon the judgment, in money judgments, *and in other cases in the discretion of the court;* and the court shall remand such cause for execution.

"(G) COSTS.

(1) WHO RECOVERS. When the judgment is affirmed in whole, the appellee shall recover costs; and when the judgment is reversed in whole the appellant shall recover costs in the court on appeal and the court below. In

all other cases costs shall be awarded as the court may deem right following, as nearly as possible, the general regulation for awarding costs.

(2) WHAT INCLUDED. The fee paid for procuring the transcript, the costs of serving and notice of appeal are a part of the costs of the court on appeal. Each party to the action shall bear the cost of printing his own briefs." (Emphasis supplied.)

Our Supreme Court has held that such a discretionary award of damages is proper where an appeal is frivolous, or without substance or merit. *Marks* v. *Bremmer* (1917), 186 Ind. 434, 116 N. E. 738; *Bradford Homes, Inc.* v. *Long* (1942), 221 Ind. 309, 47 N. E. 2d 609; *Kroeger Laundry & Dry Cleaners, Inc.* v. *Williams* (1942), 221 Ind. 299, 47 N. E. 2d 612. Likewise, this court held in *Vandalia R. Co.* v. *Walsh* (1909), 44 Ind. App. 297, 89 N. E. 320, that when an appeal is taken only to harass or delay the appellee, "thus presenting an illustration of vexatious litigation, that crowds our courts to the detriment of meritorious actions, and which should not go unrebuked," a penalty of ten per cent will be assessed against the appellant.

This appeal is devoid of merit. The record is replete with delay, bad faith, and harassment. Not only did William fail to appeal the February 5, 1964 judgment approving the will contest compromise, but six years later, after the trial court sustained his Objections to the Final Report, William insisted on filing this appeal, which can only be characterized as vexatious. He had his day in court on at least three occasions. It is to prevent exactly this kind of harassment that aggrieved parties to a collateral proceeding must appeal from a final decision thereof.

These appeals are therefore dismissed and remanded to the Benton Circuit Court with instructions to assess costs and damages against William as appellant in both cases, pursuant to Rule AP. 15 (F) and (G), including as damages therein attorneys' fees of appellees and any other costs or expenses

incurred by appellees in connection with the two cases consolidated herein for appeal.

Sullivan and Lowdermilk, JJ. (by designation), concur. White, P.J., not participating.

NOTE.—Reported in 279 N. E. 2d 254.

## ON PETITION FOR REHEARING

BUCHANAN, J.—Appellant Krick insists that he had no notice of the will compromise and that he was not represented by counsel at the hearing on February 5, 1964, at which time the court approved the compromise of the will contest. Certain attachments accompany the Petition for Rehearing which are merely argumentative of the facts certified to by the record. As indicated in our opinion, the last two paragraphs of the court's order of February 5, 1964, read as follows:

"Comes now the Plaintiffs and Defendants *by counsel* and respectfully shows the Court that this cause has been compromised and now the Plaintiffs move the Court to dismiss this cause with prejudice.

"And now the Court being duly advised in the premises ORDERS this cause dismissed *with prejudice* to the Plaintiffs. Costs to the Defendants." (Emphasis supplied.)

It is true the record does not state who was the Appellant's counsel on February 5, 1964. Which particular practitioner of our noble profession Appellant may have then or subsequently employed has no effect whatsoever on the outcome of this case.

Appellant is at war with his own record and if it was in error no attempt has been made by him to proceed according to AP 15(C).

Rehearing is therefore denied for the reasons stated in our decision of January 25, 1972.

Sullivan and Lowdermilk, JJ. (by designation), concur. White, P.J., not participating.