IN THE MATTER OF THE ESTATE OF AARON DAY NEWMAN, DECEASED, GOLDA HADFIELD, PERSONAL REPRESENTATIVE, VAUGHN RAY NEWMAN, MINOR HEIR OF AARON DAY NEWMAN, DECEASED *v.* GOLDA HADFIELD, PERSONAL REPRESENTATIVE OF THE ESTATE OF AARON DAY NEWMAN, DECEASED

[No. 1-576A68. Filed November 10, 1977. Rehearing denied December 27, 1977. Transfer denied March 10, 1978.]

*Trockman & Flynn*, of Evansville, for appellant Vaughn Ray Newman.

*O.H. Roberts, Jr.*, of Evansville, *Matthews and Shaw*, of Evansville, for appellee.

## CASE SUMMARY

LYBROOK, J.— Vaughn Ray Newman (Newman), minor heir of Aaron Day Newman, deceased, appeals from a judgment of the trial court approving the administrator's final report in the estate of Aaron Day Newman, which report Newman contends approved an excessive award of fees for Golda Hadfield (Personal Representative), and her attorney.

We reverse.

## ISSUES

Newman and the Personal Representative present several issues for our review. Having found reversible error, we will discuss only those issues relevant to our disposition of this appeal:

I.   Whether the December 18, 1973 decision of the trial court, wherein the contested fees originally were awarded, is a final appealable judgment; and, correspondingly, whether Newman's failure to file a motion to correct errors within 60 days of that decision necessitates the dismissal of this appeal?

II.   Whether the trial court erred in approving a Personal Representative's fee of $4,000 and an attorney fee of $8,000 out of an estate whose assets totaled $37,902.96?

III.   Whether the trial court erred in refusing to compel the Personal Representative to submit to Newman's attempted discovery of matters relating to the redetermination of compensation for the Representative and her attorney?

## FACTS

Aaron Day Newman, then unmarried, died intestate on August 30, 1972. He left surviving him a sister who is a resident of Indiana, a brother in Baltimore, Maryland, a son in Tennessee, a minor son born out of wedlock, and a grandson, the son of his deceased daughter.

Golda Hadfield, decedent's sister, was appointed and qualified as a personal representative, and bond was approved.

The Personal Representative filed an inventory of the estate's property which had a total appraised value of $37,902.96. The inventory listed the following assets of the estate:

| | | |
|---|---|---:|
| (1) | Checking account | $ 4,652.96 |
| (2) | Certificate of Deposit | $ 25,000.00 |
| (3) | One automobile | $ 1,000.00 |
| (4) | One parcel of real property | $ 7,000.00 |
| (5) | Household and personal goods | $ 250.00 |
| | | $ 37,902.96 |

On November 29, 1973, the Personal Representative and her attorney filed a verified petition for allowance of fees. Notice was issued by certified mail that a hearing on the petition would be held on December 18, 1973, at 9:00 A.M. The return receipt shows delivery of the notice to Newman's original attorney on November 30, 1973. No objections were filed, and at the scheduled

hearing no one appeared in opposition to the petition. The court thereupon entered its order allowing the fees.

In the petition, the following activities were listed in justification of the claimed fees of $4,000 for the Personal Representative, and $8,000 for her attorney (our summary):

(a) Preparation and filing of petition for probate of will, issuance of letters, probating such will, qualification of Personal Representative, and execution of bond;

(b) Taking property of estate into custody by Personal Representative;

(c) Inventory and appraisal of property of the estate;

(d) Preparation and filing of petition to sell personal property, order to sell personal property, and sale of personal property;

(e) Preparation and filing of petition to sell real estate, order to sell real estate, sale of real estate and report of sale;

(f) Preparation and filing of Petition to determine heirship in real estate and a hearing;

(g) Settling of claims against the estate;

(h) Preparation of federal and state income tax returns;

(i) Correspondence, general administration, paying of bills and arrangements with realtor for sale of real estate;

(j) Conferences with personal representative of one-half hour to one hour per week from September 7, 1972, to November 29, 1973.

The record further shows: (1) that there was no will to be probated; (2) that there were only four uncontested claims filed in the estate and paid by the Personal Representative without transfer to the issue docket; (3) that the only contested claim was for child support in the amount of $3,000, which resulted in an award of $1,160; and (4) that forty-three bills were listed in the final report as having been paid by the Personal Representative.

Sixty-five days after the court's determination of fees, Newman's attorney filed a petition for rehearing on this matter and a petition to remove the Personal Representative. The court denied the petitions on June 7, 1974. New attorneys for Newman

entered an appearance on September 3, 1974, and filed a motion for a rehearing on fees. On October 10, 1974, Newman's guardian filed a motion to compel discovery of matters pertaining to services performed by the Personal Representative and attorney. The court denied both the petition for rehearing and the motion to compel discovery. On two subsequent occasions Newman's discovery attempts were thwarted by the trial court's sustaining of the Personal Representative's "Motion[s] to Strike" Newman's motion to compel such discovery and his Notice of Taking of Depositions.

On December 30, 1974, Newman filed an objection to the final account on the grounds of excessive fees. The court dismissed the objection on May 1, 1975, and entered a decree of final distribution on September 16, 1975, approving the final report. It is from this decree that Newman appeals.

## DISCUSSION

### I.

We must first decide whether Newman's delay in appealing the issue of fees for the attorney and Personal Representative precludes our consideration of this appeal. The Personal Representative asks us to consider the December 18, 1973 decision as a final judgment. She relies on *Butler University v. Danner* (1943), 114 Ind. App. 236, 50 N.E.2d 928. *Butler* held, on the particular facts of that case, that an award of attorney fees in an estate proceeding is a final and appealable judgment. That court went on to hold that the appellant's failure to prosecute a timely appeal from the judgment-award precluded the court's consideration of that issue. See also *Estate of Meyer* (1965), 247 Ind. 64, 211 N.E.2d 305; transferred to the Court of Appeals (1966), 138 Ind. App. 649, 215 N.E.2d 556.

The Personal Representative in the case at bar argues that the *Butler* case controls our disposition of this issue. She concludes that since Newman failed to file any motions or objections until more than 60 days after the court entered its ruling, Newman has waived all opportunity to contest that ruling and is prohibited

from raising such objections in an appeal from the order approving the final report.

> This court had occasion to discuss the finality of orders and decrees entered pursuant to estate proceedings in the more recent case of *Krick v. Farmers and Merchants Bank of Boswell* (1972), 151 Ind. App. 7, 279 N.E.2d 254:

> "The administration of a decedent's estate is viewed as a single proceeding in rem,[1] even though during the course of this administrative proceeding collateral proceedings may occur which are adversary in nature and result in separate decisions finally adjudicating the rights of interested persons. Will contests, claims of creditors, actions for possession of real estate or intermeddling with estate assets, to name a few, are examples of collateral civil actions which may be tried by a court having probate jurisdiction. From a final determination of the rights of the parties in such ancillary proceedings an aggrieved party may appeal. *Hawes v. Kepley* (1902), 28 Ind. App. 306, 62 N.E. 720."

Thus, we previously have determined that the administration of an estate itself is to be viewed as a single proceeding; however, as the *Krick* case demonstrates, an appeal may be taken in a timely manner following any final decisions in collateral (or ancillary) proceedings. The will contest in the *Krick* case was an adversary proceeding in which the court finally determined the rights of the parties; therefore, the court held, any appeal had to be timely taken from that final decision:

> "This is true even though the administration of an estate is essentially one proceeding in rem. The collateral proceedings which arise out of the administration of the estate require finality. Otherwise, the parties against whom a judgment has been rendered in these collateral proceedings may unduly lengthen the administration of estates by waiting until the end of the estate proceedings and then file objections to the final report based on errors which may have occurred years

---

1. IC 1971, 29-1-7-2 (Burns Code Ed.) provides as follows:

"Character of proceedings. — The probate of a will and the administration of the estate shall be considered one proceeding for the purposes of jurisdiction, and said entire proceeding and the administration of a decedent's estate is a proceeding in rem. [Acts 1953, ch.112, § 702, p. 295.]"

previously in a collateral action. The early and speedy administration of estates is militated against when heirs or other adverse parties can wage guerrilla warfare against the estate and rightful heirs by losing one or more unappealed from collateral actions during the course of administration of an estate and then raise the same issues in objections to the final report. By thus lying in wait unnecessary expense is created for all concerned, the wishes of the decedent are frustrated, estate assets are dissipated, and the public interest in shortening the period of administration of decedents' estates is thwarted.

We think it consistent with the concept of one proceeding in rem that collateral proceedings be finally determined and appeals taken as in other civil causes. The implication of § 6-122 [IC 1971, 29-1-1-22 (Burns Code Ed.)] *supra*, is that, while a party '*may* prosecute an appeal,' failure to do so precludes any later appeal from a 'decision' finally determining the rights of the parties in any collateral proceeding." (Our emphasis). *Krick, supra*, at 279 N.E.2d 260.

However, the *Krick*,[2] *Butler* and *Meyer* decisions were based on our former rules of civil procedure as they existed prior to the adoption of the new Indiana Rules.[3] Consequently, those decisions did not discuss TR. 54(B), which we find to be controlling in the case at bar.

Trial Rule 54(B) provides as follows:

"When more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all

2. The appellant in *Krick* had failed to appeal from a judgment entered in 1964.

3. Jan. 1, 1970. See Ind. Rules of Procedure, Trial Rule 84.

the claims and the rights and liabilities of all the parties. A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final."

The Indiana Rule incorporates the federal rule which, because of the problem of knowing whether a judgment was ripe for appeal, was amended to require, prior to such appeal: 1) an express determination that there is no just reason to delay an appeal; and 2) and express direction for the entry of judgment. 3 Harvey, *Indiana Practice; Rules of Procedure Annotated,* § 54.2, p. 495.

"The penalty for misjudging the finality of a judgment relating to less than all the claims or parties was either the loss of the right to appeal or the taking of an expensive appeal only to have it dismissed by the appellate tribunal as premature." Harvey, p. 495.

We believe that the procedural requirements of *Krick, Butler* and *Meyer* have been modified by TR. 54(B). Accordingly, we hold that alleged error in the awarding of attorney fees in the administration of an estate need not be appealed as a final judgment unless the trial court has made the determination and direction expressly required by that rule.

In the instant case, the trial court did not make the determinations specified in that rule; therefore, the December 18, 1973 order was not a final judgment, and need not have been appealed as such within the statutorily required period.

However, the question then arises whether Newman might have appealed the award of attorney fees as an appealable interlocutory order, and, if so, whether his failure to do so precludes our consideration of this appeal. Indiana Rules of Procedure, Appellate Rule 4(B)(1), provides in pertinent part, as follows:

". . . Also, appeal from interlocutory orders shall be taken to the Court of Appeals in the following cases:

(1) For the payment of money or to compel the execution of any instrument of writing, or the delivery or assignment of any securities, evidence of debt, documents or things in action;"

* * *

We hold that the trial court's order allowing the payment of attorney fees was an appealable interlocutory order which could have been appealed at the time of its entry. We further hold that Newman's decision not to appeal the order at that time does not affect our present consideration of the case.

Prior decisions of this court as well as of our Supreme Court appear to indicate that a party's failure to appeal an appealable interlocutory order within the statutory period[4] waives that party's appellate rights. See *Indiana High School Athletic Association [IHSAA] v. Raike* (1975), 164 Ind. App. 169, 329 N.E.2d 66, and cases therein cited.

We note, however, that the *IHSAA* decision and the cases on which it rests concern the appealability of preliminary injunctions, temporary restraining orders, and special statutory procedures dealing with eminent domain proceedings. In cases such as those the order sought to be corrected on appeal from a subsequent final judgment is often no longer in effect, having been issued to enjoin certain conduct for only a limited period of time. It is clear that an appellate court would be wasting its time to consider the merits of a trial court's issuing an injunction when the injunction has been either superseded or dissolved by the time of the appeal from a final judgment in proceedings subsequent to the issuance of the injunction. We believe the policy behind the *IHSAA* decision and its predecessors is simply that appellate courts will not pass upon appeals which are, in fact,

---

4. AP. 3(B) provides in pertinent part, as follows:

"(B) Time within which the Appeal must be Submitted. In all appeals and reviews, except those from interlocutory orders, the record of the proceedings must be filed with the clerk of the Supreme Court and Court of Appeals within ninety (90) days from the date of the judgment or the ruling on the motion to correct errors, whichever is later. In appeals and reviews of interlocutory orders the record of the proceedings shall be filed within thirty (30) days of the ruling. However, if the statute under which the appeal or review is taken fixes a shorter time, the time fixed by the statute shall prevail."

moot. We further believe that different factors should be considered before waiving an aggrieved party's right to appeal an interlocutory order for the payment of money.

This is especially true in cases, such as the case at bar, when the order for payment of money is incorporated in the final judgment—here the court's approval of the Representative's final report. In these cases the aggrieved party might recover money upon the appellate court's reversal of the "interlocutory" order, while the party aggrieved by an interlocutory order issuing an injunction, on the other hand, stands to gain little by appellate reversal of that order once the order is no longer in effect. Finally, we believe that the policy behind the allowing of interlocutory appeals by AP. 4(B) is to provide an aggrieved party a procedure by which he may rectify errors of the trial court; for this reason we refuse to read that rule, in regard to orders for the payment of money, as *limiting* such a party's rights to appellate review.

We therefore hold that although Newman *might* have appealed this December 18, 1973 order under AP. 4(B)(1), his decision to contest the attorney fees awarded by that order in an appeal from the final judgment, wherein the fees were incorporated, does not preclude our present consideration of that issue. We further hold that Newman would have been obligated to appeal the December 13, 1973 judgment, at the risk of losing his appellate rights, *only* if the trial court expressly followed the procedure established in TR. 54(B).

### ISSUE II

In his first assignment of error, Newman contends that the court approved excessive compensation for the Personal Representative and her attorney. We agree.

The Indiana Probate Code provides that, when no compensation is provided in the will, the personal representative and any attorney performing services for the estate at the instance of the personal representative shall each receive compensation for their services as the court deems just

and reasonable. IC 1971, 29-1-10-13 (Burns Code Ed.). The question as to the amount of allowance is left to the discretion of the trial court and the appellate court will not disturb such a ruling in the absence of abuse of discretion. *Ex parte Hodge, Administrator* (1893), 6 Ind. App. 487, 33 N.E. 980; *In re Meyer's Estate* (1966), 138 Ind. App. 649, 215 N.E.2d 556; *Pelkey v. Strom* (1963), 135 Ind. App. 163, 187 N.E.2d 753. In making the allowances the court may take into consideration the labor performed, the nature of the estate, the difficulties attending the recovery of the assets and location of heirs or devisees, settlements in the estate, the peculiar qualifications of the administrator, her faithfulness and care, and all other factors necessary to aid the court in a consideration fair to the estate and reasonable for the personal representative and attorney. *Ex Parte Hodge, supra; Pollard v. Barkley* (1888), 117 Ind. 40, 17 N.E. 294.

Appellate review or revising of attorney fees granted by a trial court is a practice replete with potential injustice to the parties as well as to the public. For this reason it is ill-advised for this court to dictate the precise amount an attorney should receive for his or her services in a particular case; accordingly, the granting of attorney fees is a function best left to the discretion of the trial court, for that court, as a general rule, is more aware of local factors and other relevant nuances in the multitude of considerations which enter into the determination of a fair and reasonable fee. However, the action of the trial court in this regard cannot be beyond the bounds of reason.

We believe that the trial courts, in the exercise of their discretion in awarding attorney fees, should be governed by such standards as are widely recognized and accepted by those who are well informed of the many factors relevant in the charging of fees; therefore, it may be presumed that the award of an attorney fee which is considered excessive by standards of the legal profession is not a "reasonable and just" fee within the meaning of IC 1971, 29-1-10-13.

Our Code of Professional Responsibility, approved and adopted by the American Bar Association, and subsequently adopted by

our Supreme Court[5] states as follows:

"DR. 2-106 Fees for Legal Services.

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

   (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

   (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

   (3) The fee customarily charged in the locality for similar legal services.

   (4) The amount involved and the results obtained.

   (5) The time limitations imposed by the client or by the circumstances.

   (6) The nature and length of the professional relationship with the client.

   (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

   (8) Whether the fee is fixed or contingent."

After reviewing the record of the case at bar we are compelled to state that, beyond all question, we are left with a definite and firm conviction that the attorney fee awarded to the Representative's attorney is a clearly excessive fee under the guidelines of DR 2-106. The major portion of the estate (over 75%) was in liquid form, and the duties necessary to process the estate as a whole should not have been excessively difficult for a lawyer of average ability and experience.

5. See *Order* of the Supreme Court of Indiana of March 8, 1971, set out verbatim in Burns Court Rules, Book 2, Indiana Statutes Annotated (Code Edition 1973), pp. 678-679.

While we reaffirm the principle that the award of attorney fees is a matter left to the discretion of the trial court, we further hold that this discretion is confined within the guidelines of DR 2-106. In the present case the trial court has exceeded these guidelines, and thus has abused its discretion.

We also must review the award of the Personal Representative's fee. Again we must conclude that the trial court has abused its discretion in the award of this fee. The apparently simple nature of this estate, and thus the amount of work necessary to attend to the estate, do not seem to warrant an award of $4,000 out of total assets of $37,902.

The Representative argues, however, that Newman's absence from the hearing on the question of fees bars him from later alleging error in the court's award. We disagree with this contention. Newman's decision not to attend the hearing can neither alter nor abrogate the statutorily prescribed standard allowing only a "reasonable and just fee." Upon receipt of notice of the hearing, Newman justifiably could assume that the fee to be awarded would be reasonable; he could further assume that his presence would not be necessary to prevent the award of an unreasonable fee.

## ISSUE III

Newman also alleges that the trial court erred in refusing to allow him to conduct discovery in his attack on the awarding of the attorney fee. We agree, and we hold that estate proceedings are properly subject to discovery rules. See Ind. Rules of Trial Procedure, Trial Rules 1, 26 and 28(H).

## DECISION

Because the trial court abused its discretion in the award of fees for the attorney and the Personal Representative, we must reverse and remand.

Reversed and remanded for reconsideration of the amount to be awarded as fees to the personal representative and her attorney, and for other action not inconsistent with this opinion.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE — Reported at 369 N.E.2d 427.