**Kenneth R. LOVKO, Appellant,**

v.

**Rita H. LOVKO, Appellee.**

**No. 2–1177A440.**

Court of Appeals of Indiana,
Second District.

Dec. 29, 1978.

David F. McNamar and Michael R. Franceschini, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellant.

Gregory F. Hahn, William T. Rosenbaum, Dillon, Hardamon & Cohen, James A. Briggs, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Petitioner-appellant Kenneth R. Lovko (Husband) appeals from a judgment awarding custody of three minor children to Rita H. Lovko (Wife), claiming the court used an improper standard in awarding custody, the attorneys fees granted Wife were excessive, and that certain other errors were committed by the trial court.

We affirm.

## FACTS

On June 4th, 1975, Husband and Wife were granted a dissolution of marriage by a decree of the trial court which incorporated most provisions of a settlement agreement reached by the parties. Specifically, regarding custody of the couple's four minor children[1] the agreement contained the following language:

> That the custody of the above four (4) children is hereby granted to the Petitioner (Husband) until the end of the next school year being in June of 1976, at which time said custody shall be reviewed by the parties thereto.

Accordingly the Decree contained the following provisions:

> That the Petitioner (Husband) is hereby awarded temporary care and custody of said minor children until the end of the

[1] Ken, Jr., age 13, Jennifer, age 10, Theodore, age 6, and Kathy, age 3.

next school year which will be June of 1976.

On April 21, 1977, Husband petitioned that the custody of the children be reviewed, and during June of 1977, evidence was heard.

At the hearing, Husband's initial witness was Robert Pearce, a child psychiatrist who, after interviewing all the parties, testified that custody of the children should remain with the Husband.

During his testimony the following exchange took place:

Wife's Counsel: Is it possible to infer, Doctor, that Dr. Lovko preferred your participation over Dr. Lawrence, because . . .

Husband's Counsel: Judge, I'm going to object to the form of questions calling for sheer speculation on the part, calling for the mental process of Dr. Lovko and not this witness.

Court: Overruled, you may answer.

.     .     .     .     .

2.  Q.  She was admitted to Methodist Hospital in intensive care for approximately five days, is that correct?
A.  Yes.
Q.  What occurred next?
A.  I think she was moved to the closed psychiatric ward and—
MR. BRIGGS: Your Honor, I'm going to object unless this witness can tell us how he knows these things.

\*    \*    \*    \*    \*    \*

PRELIMINARY QUESTION:
Q.  Doctor Lovko, you have just told us that she, at a point and time, was moved from one room to another?
A.  Yes.
Q.  How do you know that?
A.  Two things, one, I had been checking to find out about her condition. They had informed me such, I had talked to Doctor Masbaum and he informed me similarly and later on, Rita had called me and asking for some things, I can't remember what they were. I think the check book and some other personal articles.
Q.  Did you see her at that point?
A.  No, I took articles up to the ward and I told them what they were for, they accepted them.
Q.  Did you see her physically during the period of time that she was in the hospital?
A.  Yes.
Q.  On how many occasions?

Q:  No, my question, is it not possible that Dr. Lovko preferred your participation and evaluation of himself because of his past involvement with you, and chose to ignore the proposed participation of Dr. Lawrence?

Witness: That is possible.

Later, during the cross-examination of one of Wife's witnesses, Patricia Albin (Albin), the following exchange occurred:

Husband's Counsel: How about the last time, to your knowledge, Rita went to one of Ken, Jr.'s football games or athletic events?

However, that question was excluded by the court because it had nothing to do with the witness's assessment that Wife had a good relationship with her children.

Still later, when Husband attempted to testify regarding conversations with third parties regarding Wife's emotional problems, the trial court rejected such testimony on the basis that Husband was testifying as a party and not as an expert witness.[2]

A.  One occasion.
Q.  So, you can testify of your own knowledge, what happened on the one occasion to what you saw but the rest is based on what somebody told you, correct?
A.  Yes, other than she told me too.
MR. BRIGGS: I would object to that portion of the information which was obtained from what he learned from other people, have told him other than Rita, of course.
MR. MCNAMAR: Judge, the man is a doctor. He looks at medical records, he talks with other doctors—
THE COURT: He's not here as an expert witness, though. He is here as a father who is a Petitioner in a particular cause of action. And, he did not treat this lady and had no professional relationship with her. Now, anything that he knows, he just is a plain old witness and anything that he knows that are from his observations or anything that Rita has told him, he can testify, but I'm not going to let him testify about what other doctors told him because he was not making a medical evaluation. He may have been making one, but not for this Court, because one would say that it might possibly be biased just a little bit. So let's try and limit it to what he knows, not what somebody told him.
Q.  Personal knowledge, not what other doctors have told you in regard to treatment or anything like that?
THE COURT: I realize that's pretty difficult Doctor, but do the best you can.

At trial, Wife produced an expert witness who indicated that her previous problems with alcoholism had likely been overcome, a view shared by other witnesses who had participated with her in Alcoholics Anonymous. Additional witnesses indicated that she had developed a close relationship with her three youngest children during the past year and was able to care for the children.

At the conclusion of the hearing the judge indicated that he would consider a report prepared by the Marion County Domestic Relations Counselling Bureau in making his determination of custody. This was objected to by the Husband's counsel on the grounds that he had not had the opportunity to inspect the report or examine the person making it.

The judgment of the trial court awarded custody of the three youngest children to the Wife and gave the Husband custody of the eldest boy. It contained, *inter alia*, these findings:

# 9. That the Respondent has not remarried and occupies a condominium on the west side of Indianapolis within about one mile of the Petitioner's residence.

# 10. That the mental and emotional health of the Respondent Wife has been restored to within normal limits.

# 13. That the minor daughters, Jennifer and Kathryn, have adjusted well to the care furnished by their mother since the summer of 1976.

# 17. That it is in the best interest of the minor child, Ken, Jr., to be in the custody of the father, Ken R. Lovko.

# 18. That it is in the best interest of the minor child, Jennifer, to be in the custody of the mother, Rita H. Lovko.

A. O.K., now let me get it straight, that doesn't mean any medical records that were informed or any bills or—

Q. You can testify what you have personally seen, know about as being information personally, not from what someone else has told you. Medical records, I would, I'll ask the Court.

*THE COURT*: He doesn't have a right to look at the medical records, legally. He was not an attending physician or called in.

*MR. MCNAMAR*: Well, at some point, Your Honor, he was her husband.

# 19. That is is in the best interest of the minor child, Theodore, to be in the custody of the mother, Rita H. Lovko.

# 20. That it is in the best interest of the minor child, Kathryn, to be in the custody of the mother, Rita H. Lovko.

The Husband was also ordered to pay Wife's attorneys fees in the sum of $2,000.00.

## ISSUES

Husband raises these issues:

I. Did the trial court use the proper standard in awarding custody of the children to the Wife?

II. Did the trial court abuse its discretion in the admission or exclusion of certain evidence, specifically:

(a) Was it error to allow Dr. Pearce to speculate why he was asked to examine the Lovko family?

(b) Did the trial court erroneously confine the scope of Husband's cross-examination of Albin?

(c) Should Husband have been allowed to give medical testimony based upon hearsay concerning his Wife's mental condition?

III. Was it error for the trial court to consider the Counselling Bureau report?

IV. Were the findings of the trial court supported by the evidence?

V. Were the attorneys' fees excessive?

## DECISION

ISSUE ONE—Did the trial court use the proper standard in awarding custody of the children to the Wife?

*THE COURT*: Not after this.

*MR. MCNAMAR*: Not after the dissolution in June of '75, this was September of '75.

*THE COURT*: He had no right to look at those records.

Q. How long was she confined to Methodist Hospital, Doctor?

A. September 26 to the exact day, I'm not sure, October 9th.

PARTIES' CONTENTIONS—Husband maintains that the trial court improperly treated the custody hearing as an initial custody determination rather than a modification and thus used the wrong burden of proof. Indiana law, he claims, requires that post-dissolution custody determinations be modification hearings under Ind.Code 31–1–11.5–22, and the standard should be "substantial change of circumstances," a finding the court does not make.

Wife replies that the settlement agreement incorporated in the decree provided for a temporary custody award and therefore the trial properly used a standard of the best interests of the children in awarding custody. And, under any standard there is sufficient evidence to affirm the custody "modification".

CONCLUSION—The trial court properly used the standard of the best interests of the children in awarding custody to the Wife.

The ultimate question here is a face-off between which of two standards should be used by a trial judge in awarding custody subsequent to a divorce decree which contains an agreed temporary custody award. Should he measure his decision in terms of the best interests of the children as in an initial custody award (Ind.Code 31–1–11.5–21) or should the test be the substantially changed circumstances test (Ind.Code 31–1–11.5–22(d)).

Although the Uniform Marriage and Divorce Act,[3] upon which the Indiana Act is based, (see *Covalt v. Covalt* (1976), Ind. App., 354 N.E.2d 766) applies the "best interest of the child" test when determining custody initially *or* in a modification hearing, the Indiana legislature adopted a more stringent test as to modification. Ind.Code 31–1–11.5–22(d), unlike the Uniform Act, provides:

> The court in determining said child custody, shall make a modification thereof only upon *a showing of changed circumstances so substantial and continuing as to make the existing order unreasonable.* (Emphasis supplied) (hereinafter referred to as 22(d))

Obviously the Indiana legislature sought to discourage modification attempts, perhaps as we earlier suggested, "because of the extent to which former spouses use the modification process repeatedly for vexatious purposes only." *Covalt, supra.*

The only provision of the Indiana Dissolution Act (Ind.Code 31–1–11.5–1 et seq.) which discusses temporary or provisional custody orders, Ind.Code 31–1–11.5–7(e), does provide that any temporary order ". . . *shall terminate when the final decree is entered* subject to the right of appeal or when the petition for dissolution is dismissed" (emphasis added), but this provision is of no help in determining whether custody under the circumstances before us is an initial custody determination or a modification.

■ It is true, however, that in their settlement agreement incorporated into the Decree, the parties agreed that Husband should have temporary custody of the four children until the end of the next school year in June, 1976, at which time that order would be reviewed, and no appeal was taken from that decision. Also, when the custody hearing was finally held in July of 1977 the trial court clearly indicated that he was considering this as an initial custody determination and not as a modification, a position objected to by neither party.[4]

---

3. See generally the Uniform Marriage and Divorce Act found in 9 U.L.A. 455 (1973).

4. During the hearing the following exchange occurred:

Court: . . . Do counsel for both parties agree then that we are strictly reviewing the determination of custody under paragraph A(2) of the Settlement Agreement, dated 4 June, 1975?

Mr. Briggs: Yes, I would hope, there might be a better definition, your Honor, that being though, I would maintain was for a year only.

Court: I understand that, that is what it says, until the end of the next school year being June of '76 at which time the custody shall then be reviewed by the parties hereto, so that's what we're doing. We're reviewing that issue.

Mr. McNamar: That's fine, Judge.

Later the Court says:

So in this posture there would appear to be nothing to modify, only a further act to be done to carry out the agreement of the parties and settlement agreements are favored by the Dissolution Act. Ind.Code 31–1–11.5–10(a) reads:

To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and *the custody and support of their children.* (Emphasis added) (hereinafter referred to as 10(a))

■ But have the parties in pursuing their right to make an agreement under 10(a) so as to postpone a decision as to permanent custody subsequent to the Decree brought themselves in conflict with 22(d)? We think not. The two statutes can be construed harmoniously and are in pari materia under the peculiar circumstances of this case. *See* 22(d) and *City of Hammond v. Indiana Harbor Belt Railroad Company* (1976), Ind.App., 373 N.E.2d 893; *Porter Memorial Hospital v. Harvey* (1972), 151 Ind.App. 299, 279 N.E.2d 583. 22(d) can logically be construed as applying to changing custody when there has been a previous determination of permanent, not temporary, custody. To so construe 22(d) is consistent with the right of the parties to amicably settle custody questions under 10(a).

Thus we conclude the trial court properly used the best interests of the children test in accordance with the agreement of the parties incorporated into the Decree.

By so concluding we do not necessarily approve the custody procedure followed in this case or express any opinion as to the finality of the Decree from which no appeal was taken . . . a question not before us.

*This is not exactly a modification, it's a review. And, for that reason I don't think that the provisions of 22(d) of the Act is applicable, exactly. I don't know exactly what we're do-*

Our decision is reached solely on the basis of our interpretation of the Indiana Dissolution Act, there being no Indiana cases to guide us. However, one Florida case, *Blass v. Blass* (1975), Fla.App., 316 So.2d 308, reached a like result insofar as it held that a father who was granted custody of the minor children until the end of the next school year in the divorce decree was awarded temporary custody.

ISSUE TWO—Did the trial court err in the admission or exclusion of certain evidence?

PARTIES'  CONTENTIONS—Initially, Husband argues that Dr. Pearce was improperly allowed to speculate about Husband's mental processes regarding the reason he was asked to examine Husband's family. This answer, he claims, prejudiced the trier of fact against the witness and lead him to disregard his testimony.

Wife replies that the question was within the broad scope of cross-examination, and regardless, no prejudice could have resulted from the answer.

Second, Husband claims that he was improperly denied the opportunity to impeach Albin, because he was prevented from testing her capacity for observation.

Wife replies that no foundation was established for the question posed by Husband about the football game, and that such a question was totally immaterial to the substance of her testimony.

Third, Husband claims that it was an abuse of discretion not to allow him to testify regarding medical reports and other hearsay evidence about his Wife's medical condition because he qualified as an expert witness.

Wife replies that Husband had never been her examining physician and had no right to examine the medical evidence he sought to evaluate. His attempt to merely insert hearsay evidence into the matter by claims he was an expert was correctly thwarted.

*ing except trying to review and do what originally section 21, the best interests of the children, I think he can go into these matters as to the father's care.* (Emphasis Added)

CONCLUSION—The trial court did not commit reversible error in its treatment of this evidence.

■ In the discussion of this issue it should be remembered that the trial judge has considerable latitude in the admission or rejection of evidence. *State v. Lee et al* (1949), 227 Ind. 25, 83 N.E.2d 778.

## A. DR. PEARCE

■ Although as a general rule, it is impermissible for a person to speculate about the thought processes of another person, *Clay v. State* (1976), Ind., 346 N.E.2d 574; *Gayer v. State* (1965), 247 Ind. 113, 210 N.E.2d 852, before an error in the admission or rejection of evidence may justify reversal, the error must relate to a material matter or be of a character to substantially affect the rights of the parties. *Swallow Coach Lines, Inc. v. Cosgrove* (1938), 214 Ind. 532, 15 N.E.2d 92.

■ Here Dr. Pearce's answer that "it was possible" Husband preferred his participation in the case because of past contacts between them, was evident from other evidence in the record and could hardly have substantially affected Husband's rights. Also Dr. Pearce testified that his participation was more likely requested because of his specialization in the particular aspect of psychology involved in this case.

We find no reversible error here.

## B. PATRICIA ALBIN

■ The scope of cross-examination of a witness is broad and its limits lie within the discretion of the trial court. *Merry v. State* (1975), Ind.App., 335 N.E.2d 249. Even if discretion is abused, we will reverse only if there "was an erroneous exclusion of evidence vital to the appellant's case; .  . " *Auto-Teria, Inc. v. Ahern* (1976), Ind.App., 352 N.E.2d 774, 784.

■ Although Husband claims his question would have assessed Albin's capacity of

observation, a question as to when Wife last attended one of Ken's football games was somewhat peripheral, not vital, to the ultimate custody issue.

## C. DR. LOVKO (HUSBAND)

■ The record is somewhat confused as to whether the evidence was offered by Dr. Lovko as an expert or whether he was merely testifying as to matters which had occurred to the Wife. If the objection was that he was attempting to testify to matters which he had no first-hand knowledge, then the trial court properly restricted Dr. Lovko's testimony to those matters which he had direct knowledge.[5] If, however, he was trying to use Dr. Lovko as an expert witness, the trial court possesses wide discretion in determining if a witness is qualified to testify as an expert, *Snow v. Cannelton Sewer Pipe Company* (1965), 138 Ind. App. 119, 210 N.E.2d 118, and its ruling will be set aside only if there is a manifest abuse of that discretion. *State v. Vaughan* (1962), 243 Ind. 221, 184 N.E.2d 143; *Linton-Summit Coal Co. v. Hutchison* (1953), 232 Ind. 369, 111 N.E.2d 819; *Northern Indiana Public Service Company v. Otis* (1969), 145 Ind.App. 159, 250 N.E.2d 378.

■ Our courts have recognized that an expert witness may rely upon hearsay evidence in making an assessment, *Gooch v. Hiatt* (1975), Ind.App., 337 N.E.2d 585, but that privilege is not applied "carte blanche." *See Matter of Adoption of Lockmondy* (1976), Ind.App., 343 N.E.2d 793.

■ The dangers of allowing a non-attending medical expert to relate hearsay from other physicians, particularly if those physicians are available but do not testify at trial, has been recognized. *See Briney v. Williams* (1968), 143 Ind.App. 691, 242 N.E.2d 132. Therefore, we find no abuse of discretion in refusing to permit a nonattending physician (Husband) who is a party to an action from testifying as an expert

---

**5.** Also the Husband failed to preserve any issue by failing to make an offer to prove as to the expected answer, if any, that was excluded by the trial court's sustaining of the Wife's hearsay objection.

based solely on the hearsay opinions of other physicians.[6]

ISSUE THREE—Did the trial court err in considering the report of the Marion County Domestic Relations Bureau?

PARTIES' CONTENTIONS—Husband's position is that the Court erred by considering a report prepared by the Marion County Domestic Relations Counselling Bureau (the Bureau) because he never saw it or had the opportunity to examine the caseworker who prepared it.

Wife replies that both parties agreed to have the Bureau prepare a report and that one of Husband's co-counsel read the report. This, she replies, should be sufficient to fulfill the notice requirement of the statute.

CONCLUSION—The Court committed no error in considering the Bureau's report.

Ind.Code 31–1–11.5–21 reads in relevant part:

(e) The court may seek the advice of professional personnel whether or not they are employed on a regular basis by the court. The *advice given shall be in writing and shall be made available by the court to counsel upon request. Counsel may call for cross-examination any professional personnel consulted by the court.* (Emphasis supplied) (hereinafter referred to as 21)

■ Husband's counsel made no request to examine the document even though the record indicates *both* parties requested such a report be prepared and one of Husband's counsel apparently read the report. Notice to an attorney is notice to the client who employs him. *Logal v. Cruse* (1977), Ind., 368 N.E.2d 235; *Krick v. Farmers and Merchants Bank of Boswell* (1972), 151 Ind.App. 7, 279 N.E.2d 254.

Nor was Husband justified in believing this report would not be used merely because it was ordered by a previous judge.

The report was certainly relevant and was prepared by an impartial source. There is nothing in the record to indicate Husband sought a continuance in order to examine the report and possibly prepare an examination of the caseworker. *Butler v. State* (1978), Ind.App., 372 N.E.2d 190.

■ We cannot accept Husband's argument that Ind.Code 31–1–11.5–22(c) (hereinafter referred to as 22(c)) requires the court to mail him a copy of the report. This statute is inapplicable as it deals with modification hearings.

In any event, Husband was aware of the report, one of his attorneys inspected it, and a continuance was not sought.

ISSUE FOUR—Were the findings of the trial court supported by the evidence?

PARTIES' CONTENTIONS—Husband attacks the findings and judgment of the trial as not supported by and contrary to the evidence.

Wife responds that the testimony of several witnesses indicated that she had overcome her emotional difficulties and had maintained a close relationship with her children. This, she claims, would support a finding that it was in the "best interests of the children" for her to be awarded custody.

CONCLUSION—The findings of the trial court were supported by the evidence.

In order to affirm the decision of the trial court, we need only look for a rational basis for the action taken:

This court's function on appeal [in a child custody case] is to examine the decision of the trial court and determine whether the record discloses evidence or reasonable inferences to be drawn therefrom which serve as a rational basis to support the finding of the trial court. . . . *Franklin v. Franklin* (1976), Ind.App., 349 N.E.2d 210.

And there is a rational basis. Husband merely quarrels with the result reached based on his version of the evidence.

---

6. This case is clearly distinguishable from Husband's cited case of *Indiana Union Traction Company v. Pheanis* (1908), 43 Ind.App. 653, 85 N.E. 1040, in which a physician whose fee was contingent on the case's outcome was allowed to testify, *but to matters which he directly observed.*

■ It is true the court may have mistakenly characterized Wife's abode as a condominium rather than an apartment, but such a finding is hardly so erroneous as to warrant setting aside the finding or judgment. TR. 52(A)(3).

■ As to findings # 10, 13, 17, 18, 19 and 20 there was evidence that Wife's mental health was restored to normal limits and that the minor daughters had adjusted well to the mother's care.

Dr. Pearce testified that she was recovering from her difficulties and was an adequate parent. Several other witnesses testified concerning her recovery.

Similarly, the testimony of several witnesses indicated that Wife and daughters had developed a warm relationship.

In considering whether the Wife should have custody of the three youngest children the trial court's action was governed by the "best interests of the child" test. § 21(d). It is not necessary to find one parent unfit in order to change or award custody. *Franklin, supra.*

There was no abuse of the trial court's discretion in awarding custody.

ISSUE FIVE—Was the award of attorneys' fees excessive?

PARTIES' CONTENTIONS—Husband claims that as the Wife had already paid her attorney Three Thousand Dollars ($3,000), and had an ability to pay additional fees, it was an abuse of discretion for the trial court to order him to pay Two Thousand Dollars ($2,000) to the Wife. Further, he argues, the sum already paid should be sufficient to compensate the attorney for the amount of time expended.

Wife replies that her attorney indicated that a reasonable attorney's fee for the 81.6 hours he had labored was Four Thousand Five Hundred Dollars ($4,500), and that it was no abuse of discretion to require the Husband, considering his substantial income, to share the burden of those fees.

CONCLUSION—The award of attorneys fees were not excessive.

■ The award of attorney's fees will be disturbed on appeal only where a clear abuse of discretion is shown. *McDaniel v. McDaniel* (1964), 245 Ind. 551, 201 N.E.2d 215; *Brown v. Brown* (1973), 157 Ind.App. 672, 301 N.E.2d 400.

■ The evidence at trial was that a reasonable attorney's fee for the 81.6 hours expended by Wife's counsel on the case was Four Thousand Five Hundred ($4,500) Dollars. Of this total Husband was ordered to pay only Two Thousand Dollars ($2,000). Considering the disparity in their respective incomes, we find no abuse of discretion in an award which requires him to pay less than half of Wife's total attorney's fees.

Finding no grounds for reversal, we affirm.

STATON and SHIELDS, JJ., concur.