**Ronald P. SCHWEDLAND, Charlotte G. Schwedland and Village Square Knits, Inc., Appellants (Defendants),**

v.

**Charles A. BACHMAN and Donna M. Bachman, d/b/a Village Square Knits, Appellees (Plaintiffs).**

No. 29A02–8610–CV–352.

Court of Appeals of Indiana, Second District.

Aug. 31, 1987.

Jerry Williams, John E. Taylor, Indianapolis, for appellants.

Thomas D. Mantel, Richard L. Darst, Mantel, Mantel & Reiswerg, Indianapolis, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

The appellants-defendants Ronald P. Schwedland, Charlotte G. Schwedland, and Village Square Knits, Inc. [hereinafter collectively referred to as the Schwedlands] bring this interlocutory appeal under Ind. Rules of Procedure, Appellate Rule 4(B)(1), claiming that the trial court's order authorizing the appellees-plaintiffs Charles A. Bachman and Donna M. Bachman d/b/a Village Square Knits [hereinafter collectively referred to as the Bachmans] to deposit a tendered check in the amount of $18,500.00 with the court pending a final decision on the merits, is contrary to law.

We affirm.

## FACTS

The relevant facts are that the Schwedlands signed a promissory note on October 20, 1976, for the purchase of the Bachmans' unincorporated business, whereby the Schwedlands promised to pay the Bachmans, in installments, $184,000.00 plus interest. The Schwedlands made their monthly payments until June 1, 1980, after which the payments ceased. The Bachmans filed a complaint on January 5, 1984, asking for the unpaid balance of approximately $105,833.00 plus interest, attorneys fees, and costs.

In April of 1984, the parties' attorneys discussed settlement and purportedly reached an oral settlement agreement, with the Schwedlands agreeing to pay the Bachmans $18,500.00 from the proceeds of the sale of their house in return for dismissal of the Bachman's suit against them. The parties now dispute the agreed time period in which the house had to be sold and the proceeds turned over to the Bachmans. Nonetheless, a written settlement agreement was never signed by the parties.

On December 3, 1985, the Bachmans filed an amended complaint requesting prejudgment attachment of the Schwedlands's assets because the Schwedlands were no longer residents of Indiana. On January 21, 1986, the trial court entered an order of attachment as follows:

## "ORDER OF ATTACHMENT AND APPROVAL OF BOND

This cause comes before the Court on plaintiffs' Amended Complaint. The plaintiffs have submitted a written undertaking in the amount of One Hundred Thirty-Three Thousand Dollars ($133,000.00). Having investigated the truth of the averments, the Court now finds that:

1. Plaintiffs' Amended Complaint states a claim for relief.

2. There is probable cause to believe that the defendants Schwedland [sic] have left the State of Indiana, that the defendant Village Square Knits, Inc. has no assets and that unless the Court orders prejudgment attachment, plaintiffs will be unable to enforce any judgment which may be granted by this Court.

3. Attachment without notice to defendants appears necessary on the ground that prior notice might well result in the disposition and/or transfer of the real estate and improvements, being the only assets available to satisfy plaintiffs' claim.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that:

1. The Sheriff of Hamilton County, Indiana, take those steps necessary to cause the Sheriff of Marion County, Indiana, to seize and hold the property of defendants not exempt from execution or so much thereof as will satisfy plaintiffs' claim for One Hundred Thirty-Two Thousand Eight Hundred Four Dollars and Eighty-One Cents ($132,804.81) plus reasonable attorneys' fees:

Lots Numbered 67 and 68 in Wynnedale, now in the Town of Wynnedale, in Marion County, Indiana, as per plat thereof, recorded in Plat Book 20, pages 27 and 28, in the Office of the Recorder of Marion County, Indiana, more commonly known and described as 2125 Wilshire Road, Indianapolis, Indiana, pending the trial and determination of this action.

2. In executing this Order, the Sheriff of Hamilton County shall cause the Sheriff of Marion County to take first defendants' personal property; if enough thereof is not found to satisfy plaintiffs' claim and costs of this action, then their real estate.

3. The Sheriff of Hamilton County shall cause the Sheriff of Marion County to proceed, with the assistance of a disinterested and credible householder of the county, and make an inventory and appraisement of defendants' nonexempt property.

4. The Sheriff of Hamilton County shall cause the Sheriff of Marion County to serve a copy of this Order upon each defendant in the manner required by law and shall make his return when the Order has been executed or discharged. Defendants may obtain redelivery of the property by filing a written undertaking, in the amount of the appraised value of such property. Defendants may discharge the attachment by filing a written undertaking with sufficient surety to be approved by the Court to the effect that defendants will appear in the action and perform the judgment of the Court.

This Order of Attachment binds the defendants' property in the County subject to execution and becomes a lien thereon from time of its delivery to the Sheriff. This lien serves as constructive notice to third parties only as stated in Indiana Rule of Trial Procedure § 63.1(C) and 64(B)(6)."

*Record* at 82–83.

The Schwedlands finally sold their home in June, 1986, and voluntarily sent the Bachmans a check in the amount of $18,500.00 presumably in accordance with the oral set-tlement agreement. The Schwedlands assumed the Bachmans would then dismiss the lawsuit. The Bachmans did not dismiss the suit because they had not received the check within what they perceived as the agreed time period. The Bachmans retained the check, however, and on August 29, 1986, they filed a petition for authority to deposit the payment into court.

On September 3, 1986, the trial court granted the Bachmans' request:

"ORDER

COME NOW the Plaintiffs in the above-captioned action with counsel, and file herein their Petition For Authority To Deposit Payment Into Court, which said petition is in the words and figures as follows:

(H.I.)

And the court have examined such petition and otherwise duly advised in the premises, now finds that the petition should be approved.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Petitioners shall be and they hereby are authorized and ordered to endorse over to the Clerk of this court the check presently held by them in the amount of Eighteen Thousand Five Hundred Dollars ($18,500.00).

IT IS FURTHER ORDERED that such check shall be held by the Clerk of this court pending final adjudication on the merits and thereafter to be disbursed according to Order of this court.

IT IS FINALLY ORDERED that the Plaintiffs' action in tendering the above-described check shall be without prejudice, shall not be construed as an agreement to settlement, shall not be construed as a stipulation to dismiss, nor in any way whatsoever be considered in determining the rights and liabilities of any party to this action."

*Record* at 126–27.

The trial court subsequently denied the Schwedlands' motion to reconsider the or-

der. At that time, the Schwedlands initiated this interlocutory appeal.

## ISSUES

Initially, we address the following issue raised by the Bachmans:

1. Does this court have jurisdiction to decide this appeal under A.R. 4(B)(1), which authorizes interlocutory appeals from orders "for the payment of money?"

The Schwedlands have raised four issues, which we combine and restate as:

2. Was the trial court's order, authorizing the Bachmans to deposit the check into court, contrary to law?

## DECISION

*ISSUE ONE* —Does this court have jurisdiction to decide this appeal under A.R. 4(B)(1), which authorizes interlocutory appeals from orders "for the payment of money?"

*PARTIES' CONTENTIONS* —The Bachmans argue that no jurisdiction exists for this appeal under A.R. 4(B)(1) because the Schwedlands were not ordered to pay any money, and because the money paid to the Bachmans was already delivered by the Schwedlands prior to the court's order.

The Schwedlands answer in their reply brief that the effect of the trial court's order was to prevent the Schwedlands from the use of their money pending trial on the merits, and thus they, in effect, were ordered to pay money into court.

*CONCLUSION* —The trial court's order was an appealable interlocutory order.

The Schwedlands bring this appeal under A.R. 4(B)(1), which provides for appeals from interlocutory orders "for the payment of money." *See Cook v. Citizens Nat'l Bank* (1881), 73 Ind. 256; *State v. Kuespert* (1981), Ind.App., 425 N.E.2d 229, *trans. denied.*

In past cases allowing an interlocutory appeal for the payment of money, the trial court has directly ordered one of the parties to pay a sum to another party or into court. *Welling v. Welling* (1971), 257 Ind. 120, 272 N.E.2d 598 (husband ordered to pay to wife temporary support, and attorney and living expenses of wife); *Apartment Properties, Inc. v. Luley* (1969), 252 Ind. 205, 247 N.E.2d 74 (trial court ordered appellants to pay amount of appraiser's award to court clerk); *Bahre v. Bahre* (1964), 245 Ind. 522, 198 N.E.2d 751 (court's order directing husband to pay wife's legal expenses was properly appealable interlocutory order, if husband had properly raised it in the assignment of errors); *Brown v. Brown* (1945), 223 Ind. 463, 61 N.E.2d 645 (court required husband to pay wife support and attorneys fees); *Rost v. International Elec. Co.* (1925), 201 Ind. 568, 146 N.E. 821 (court directed appellant to pay allowance to receiver of trust and attorney); *Pounds v. Chatham* (1884), 96 Ind. 342 (order in proceedings supplemental requiring third party to pay into court money for the use of wife which third party owed to husband); *Cook, supra* (interlocutory appeal for payment of money based on court's order to appellant for proceeds of sale of wheat to be paid into court); *McKnight v. Knisely* (1865), 25 Ind. 336 (order directing debtors to pay money due on notes into court); *Kuespert, supra* (state could appeal trial court's order directing it to pay plaintiffs' attorneys fees under A.R. 4(B)(1)); *Estate of Newman v. Hadfield* (1977), 174 Ind.App. 537, 369 N.E.2d 427, *trans. denied* (trial court ordered appellants to pay attorneys fees).

Appeals from interlocutory orders are allowed only when expressly authorized, with such authorization being strictly construed. *Weldon v. State* (1972), 258 Ind. 143, 279 N.E.2d 554; *Anthrop v. Tippecanoe School Corp.* (1972), 257 Ind. 578, 277 N.E.2d 169. Thus, one might conclude that the trial court's order was not properly appealable because the order was not directed to the Schwedlands and because the Schwedlands voluntarily sent the check to the Bachmans.

However, authority exists to support the Schwedlands' appeal even though the trial court's order was not directed to them. *See Castor v. Castor* (1975), 165 Ind.App. 520, 333 N.E.2d 124 (wife brought

interlocutory appeal after trial court ordered *husband* to pay support and attorneys fees). Additionally, we cannot view A.R. 4(B)(1) so narrowly as to ignore the essential effect of the trial court's order. As the Bachmans never cashed the Schwedlands's check, and continued to reject the check as an acceptance of the purported settlement agreement, the trial court's order effectively prevents the Schwedlands from the use of their money during the pending litigation. *See McKnight, supra* (purpose of allowing appeals for the payment of money is to provide a remedy to parties compelled to part with money which is tied up awaiting litigation). Thus, the trial court has in effect ordered "the payment of money" into court, thereby providing us with jurisdiction to hear this appeal.

*ISSUE TWO* —Was the trial court's order, authorizing the Bachmans to deposit the check into court, contrary to law?

*PARTIES' CONTENTIONS* —The Schwedlands argue that the trial court's order permits the Bachmans to avoid repudiation of the alleged settlement agreement by not accepting the check, while at the same time depriving the Schwedlands of the use of their money by not returning their check to them. The Schwedlands further contend that the order implicitly finds that the Schwedlands have a minimum obligation to the Bachmans of $18,500, without allowing the Schwedlands to offer evidence. Finally, the Schwedlands liken the deposit of the check to a preliminary injunction, entered without the required procedures.

The Bachmans counter that the money is in dispute and properly deposited into court under Ind.Rules of Procedure, Trial Rule 67(A). The Bachmans also point to the prejudgment order of attachment as an additional basis allowing the court to retain the money.

*CONCLUSION* —The trial court did not err in authorizing and ordering the Bachmans to deposit the tendered check into court.

■ T.R. 67(A) allows a party to deposit with the court a sum of money pending determination of rightful ownership. However, T.R. 67(A) will not support the trial court's action in this case, as the typical situation envisioned by that rule is one whereby a party holding a sum of money admits his liability for that sum to multiple claimants, and wishes to avoid payment of interest and responsibility of caring for the fund during litigation. *See Blinzinger v. Americana Healthcare Corp.* (1987), Ind. App., 505 N.E.2d 449; 26A C.J.S. *Deposits In Court* § 1 (1956); 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 67.01[6] (2d ed. 1986). Indiana's T.R. 67(A) apparently will not allow the possessing party to contest his liability for the sum while at the same time enjoying the benefits of placing the money into court. *Blinzinger, supra.* Additionally, a T.R. 67(A) deposit is allowed only when the money is the subject of litigation, and not merely dependent upon the judgment rendered in the action. *Id.; see also* 7 J. Moore & J. Lucas, *supra*, ¶ 67.02; 23 Am.Jur.2d *Deposits In Court* § 2 (1983).

In our case, the dispute does not surround the $18,500.00 check itself, but actually involves a dispute over whether there was an accord and satisfaction of the settlement agreement, or alternatively, whether the Schwedlands will be liable on the promissory note. Also, the Bachmans are not admitting liability to other parties for the sum. Rather, they reject the purported settlement agreement, but claim the money as a "minimum obligation" which ultimately will be owed to them by the Schwedlands. Thus, T.R. 67(A) is not an adequate hook on which the Bachmans may hang their hat.

■ While the deposit theory is not a basis for sustaining the trial court's order, the record affords another basis for doing so. An attachment is an ancillary proceeding incidental to the main action by which an alleged debtor's property is taken to secure the payment of a prospective judgment. *Commercial Credit Corp. v. Ensley* (1964), 136 Ind.App. 389, 199 N.E.2d 108, *trans. denied.* T.R. 64(B) provides in part:

"Attachment or attachment and garnishment shall be allowed in the following cases in addition to those where such

remedies prior to judgment are now permitted by law:

"(1) It shall be a cause for attachment that the defendant or one of several defendants is a foreign corporation, *a nonresident of this state*, or a person whose residence and whereabouts are unknown and cannot be determined after reasonable investigation before the commencement of the action." (emphasis supplied).

Ind.Code 34–1–11–1 (1982) also provides that a plaintiff may have an attachment against the property of a defendant when the action is for the recovery of money and when the defendant is a nonresident of the state. Once the stated grounds for attachment are shown, the attachment statute should be liberally construed to effect its remedial nature. *Transcontinental Credit Corp. v. Simkin*, (1972), 150 Ind.App. 666, 277 N.E.2d 374, *trans. denied.*

■ Here, the trial court granted an order of attachment based on the Bachmans' showing that the Schwedlands had moved out of state and that the Bachmans would be unable to enforce any judgment against the Schwedlands without an order of attachment. The Schwedlands have never objected to this order of attachment, and address it for the first time in their reply brief. Thus, the attachment order included the Schwedlands' property in the county subject to execution, and became a lien on the property from the time of the delivery of the order to the sheriff. IC 34–1–11–10. As a trial court may take judicial notice of its own records and judgments, *Apple v. Greenfield Banking Co.* (1971), 255 Ind. 602, 266 N.E.2d 13, the trial court could recognize its prior attachment order and allow the Bachmans' deposit in furtherance of the order. The trial court's order allowing the deposit simply helped to effectuate the purpose of the attachment order, i.e., to secure the property against alienation by the Schwedlands and to hold the property until execution after judgment is obtained. *See* 7 C.J.S. *Attachment* § 191 (1980). Viewing the facts in a light most favorable to the trial court's judgment, we conclude the trial court's order for the deposit of this check was not contrary to law.

■ In their reply brief, the Schwedlands argue that the Bachmans waived or abandoned their rights under the attachment order by unreasonably delaying their request to deposit the check with the court. However, we do not view the period between the receipt of the check and the Bachmans' petition to deposit the check with the court as evidence of their waiver or abandonment of the attachment lien. Generally, mere failure or delay by a plaintiff in asserting his rights under an attachment, without some affirmative act which is clearly inconsistent with the attachment order, will not constitute abandonment of the attachment. 7 C.J.S., *supra*, at § 211(B). Thus, the Schwedlands have failed to persuade us that the attachment order has been waived.

■ The remaining contentions of the Schwedlands are similarly unpersuasive. Although the Schwedlands argue that the trial court's order allowing the deposit "implicitly" found that the Schwedlands owed the Bachmans a minimum obligation of $18,500.00, the trial court's order specified that the tender of the check should in "[no] way whatsoever be considered in determining the rights and liabilities of any party to this action." *Record* at 127. Additionally, the trial court has not denied the Schwedlands the opportunity to present evidence, as the Schwedlands had the opportunity to request a hearing or submit arguments regarding the deposit of money. The trial court's order did not determine the liabilities of the parties as to the merits of the case. The Schwedlands' final contention that the effect of the trial court's order was a preliminary injunction entered without the required procedures is not convincing, as the record clearly reveals that this procedure was not in the nature of a preliminary injunction. We cannot agree that the general language in *Baxter v. United Forest Products Co.* (8th Cir.1969), 406 F.2d 1120, *cert. denied*, 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42, concerning a "so-called injunction" was meant to be authority for the strict interpretation which the Schwedlands now urge.

Thus, the trial court's order was not contrary to law.

Affirmed.

MILLER, P.J., and SULLIVAN, J., concur.