Rosita L. CUA, Appellant–Plaintiff,

v.

Paul W. MORRISON, Stephen M. Paterson, and State Farm Mutual Automobile Insurance Company, Appellees–Defendants.

No. 29A02–9112–CV–566.

Court of Appeals of Indiana, Second District.

Oct. 13, 1992.

Transfer Denied Dec. 16, 1992.

C. Dennis Wegner, Jeffrey K. Orr, C. Dennis Wegner & Assocs., Indianapolis, for appellant-plaintiff.

Robert C. Riddel, Kevin C. Schiferl, Locke Reynolds Boyd & Weisell, Indianapolis, Douglas D. Church, Church, Church, Hittle & Antrim, Noblesville, Kenneth M. Wahnsiedler, Young Cochran & Reese, Indianapolis, for appellees-defendants.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-plaintiff Rosita L. Cua (Cua) takes an interlocutory appeal from the trial court's order compelling her to execute a medical information release form and a letter authorizing Cua's physicians to meet and confer *ex parte* with defense counsel.

We dismiss.

## FACTS

On February 22, 1990, Cua was driving her 1985 Cadillac on an Indianapolis street when she was struck by a car driven by Paul Morrison (Morrison). A few weeks later, on March 15, 1990, Cua was driving a 1990 Nissan Sentra onto an exit ramp from southbound I–465 when she was struck from behind by a vehicle driven by Stephen Paterson (Paterson).

Cua filed a single suit against Morrison and Paterson for personal injuries, property damage and loss of income. Cua later amended her complaint to add as a defendant her insurance carrier State Farm Mutual Automobile Insurance Company (State

Farm), from which Cua sought to recover underinsurance coverage for the accident.

During discovery counsel for Paterson wrote a letter to Cua's attorney acknowledging receipt of reports from Dr. Oestrike (Oestrike) and Dr. Roos (Roos), two of the physicians who treated Cua, and requested that Cua execute a medical release authorizing Paterson's counsel to discuss the reports directly with the physicians. In addition, Paterson's attorney requested that Cua execute a general release authorizing defense counsel to interview all other health care providers who had treated Cua.

On August 12, 1991, Cua's attorney responded to the letter stating that he would agree to formal depositions of Oestrike and Roos, but would not allow Paterson's attorneys to meet with the physicians informally without the presence of counsel for Cua. At Cua's deposition the next day, Paterson's counsel renewed his request, which was again refused.

On August 16, 1991, Paterson filed a motion to compel Cua to execute a medical information release and to execute a letter authorizing her health care providers to confer *ex parte* with defense counsel. Over Cua's objections, the trial court granted Paterson's motion:

"The Court, having reviewed Defendant, Stephen M. Paterson's 'Motion of Defendant Stephen M. Paterson to Compel Plaintiff Rosita L. Cua to Execute Medical Information Release and to Compel Counsel for Plaintiff to Execute a Letter Authorizing Health Care Providers to Confer with Counsel for this and all Defendants', hereby ORDERS the following:

1. That Plaintiff, Rosita L. Cua, execute an authorization to release medical information identical in all respects to the sample authorization attached hereto as Exhibit A; and,

2. That Plaintiff's attorney, C. Dennis Wegner, execute a letter authorizing any and all health care providers who provided care to Plaintiff to meet and confer with counsel for Defendants in this cause."

*Record* at 95.

Exhibit A provided in relevant part:

"This release authorizes the physicians, dentists, chiropractors, nurses, therapists, hospitals, clinics, dispensaries, home health care centers, psychiatrists, psychologists, social workers, or any other medical facility or health or social worker or care provider to discuss with, release for copying or provide copies to [defense counsel] ... the following: any and all medical records, reports, X-rays, hospital records, evaluations or tests, photographs, notes, bills, payment schedules, prescriptions, or any other results of investigation, diagnosis, treatment or prognosis concerning injuries, ailments, disabilities, deformities, handicaps or pains claimed by or in connection with the below-described condition of the above plaintiff. This Authorization shall extend to any condition, past or present, of this patient which is in any way causally or historically relevant to the claim of Rosita L. Cua of physical, mental and emotional injuries allegedly resulting from an automobile accident which occurred on or about the 14th day of March, 1990, in the City of Indianapolis, Indiana. This Authorization is made in connection with litigation involving this patient."

*Record* at 97.

Cua now seeks to appeal the trial court's order pursuant to Indiana Rules of Procedure, Appellate Rule 4(B)(1).

## DECISION

■ Although Paterson raises two issues for our consideration, we must first consider *sua sponte* whether this court has jurisdiction to hear this appeal:

*ISSUE*—Whether a party who is compelled to execute a medical release form has the right to seek an interlocutory appeal of the court's order pursuant to A.R. 4(B)(1)?

*CONCLUSION*—A party does not have a right, under A.R. 4(B)(1), to an interlocutory appeal of a discovery order which compels the party to execute a medical release form.

Cua says an interlocutory appeal is authorized in this case pursuant to A.R. 4(B)(1). *See Appellant's Brief* at 3. At first blush it would appear that compelling Cua to execute the medical release form provided sufficient grounds under A.R. 4(B)(1) to take an interlocutory appeal:

"(B) ... Also, appeal from interlocutory orders shall be taken to the Court of Appeals in the following cases:

(1) For the payment of money *or to compel the execution of any instrument of writing*, or the delivery or assignment of any securities, evidence of debt, documents or things in action;" (emphasis supplied).

Despite the broad language employed in 4(B)(1), our supreme court has limited the right to take an interlocutory appeal under this rule:

"The matters which are appealable as of right under Appellate Rule 4(B)(1) involve trial court orders which carry financial and legal consequences akin to those more typically found in final judgments: payment of money, issuance of a debt, delivery of securities, and so on. *See, e.g. Newman v. Hadfield* (1977), 174 Ind.App. 537, 369 N.E.2d 427 (attorney fees); *Schwedland v. Bachman* (1987), Ind.App., 512 N.E.2d 445 (delivery of a check)."

*State v. Hogan* (1991), Ind., 582 N.E.2d 824, 825.

The trial court in *Hogan*, pursuant to the plaintiff's request, ordered the State to produce certain documents in possession of the Attorney General and certified its order for interlocutory appeal pursuant to A.R. 4(B)(6). In response, the plaintiffs claimed that the State's appeal was as of right based on A.R. 4(B)(1) (which provides for an interlocutory appeal when the trial court "compel[s] ... the delivery ... of documents") and the State's appeal was not filed within the time limits provided by that rule. The State countered that the appeal was discretionary pursuant to A.R. 4(B)(6).

It was undisputed that the State had met the time requirements of A.R. 4(B)(6).

In accepting transfer, the Supreme Court characterized the issue as: "Is a trial court's order to compel production of documents during discovery appealable as of right under Ind.Appellate Rule 4(B)(1)?" *Hogan, supra*. at 825. After examining the rule, the supreme court concluded that A.R. 4(B)(1) was intended to apply to trial court orders which carry financial and legal consequences and that A.R. 4(B)(1) was "not designed to create an appeal as of right from every order to produce documents during discovery." *Id.* at 825; *See also Greyhound Lines, Inc. v. Vanover* (1974), 160 Ind.App. 289, 311 N.E.2d 632.

Likewise in *Western Union Tel. Co. v. Locke* (1886), 107 Ind. 9, 7 N.E. 579 our supreme court, under the statutory predecessor to A.R. 4(B)(1),[1] concluded that a party did not have a right to take an interlocutory appeal from a court order compelling the production of a document:

"We cannot bring our minds to the conclusion that this statute was intended to give the right of appeal in every case where there is an order for the production of a document for use as evidence on the trial; and unless this right of appeal exists in every case, whether the instrument directed to be produced be a promissory note, a receipt, a lease, or a deed, it exists in none. *It is easy to see that the administration of justice might be seriously embarrassed, and vexatious delays secured, if appeals could be taken in every case where a written instrument is ordered to be produced for use as evidence on the trial of the cause.*"

*Id.* at 14, 7 N.E. at 582 (emphasis supplied).

■ *Hogan, Western Union* and *Greyhound Lines* stand for the proposition that a discovery order requiring a party to produce documents does not constitute a "delivery of documents" so as to provide the

---

1. "Appeals ... may be taken from an interlocutory order of any Circuit Court or Judge thereof, in the following cases:

*First*, for the payment of money, to compel the execution of any instrument of writing, or the delivery or assignment of any securities, evidences of debt, documents, or things in action."
Ind.Rev.St. of 1881, Section 646.

compelled party with the right to pursue an interlocutory appeal of the order under A.R. 4(B)(1) or its statutory predecessor. This case involves a similar situation—whether a discovery order compelling a party to execute a medical release form is "compel[ling] the execution of any instrument of writing" as provided by A.R. 4(B)(1). Although this precise issue has not yet been addressed in a published decision,[2] we conclude that the principle enunciated by our supreme court in *Hogan* and *Western Union* must prevail. A.R. 4(B)(1) is not intended to entitle parties to appeal discovery orders simply because the court requires a party to deliver or sign a document. *See Hogan, supra; Western Union, supra; Greyhound Lines, supra.* Rather 4(B)(1) is intended to provide for a right to appeal trial court orders which carry financial and legal consequences similar to those more often found in final judgments, i.e. the payment of money, issuance of a debt, delivery of securities, and so on. *Hogan, supra; see e.g. Newman, supra; Schwedland, supra.*

■ While Cua does not have a *right* to appeal the trial court's order compelling her to execute the release under A.R. 4(B)(1), she could have asked the trial court to certify the discovery order for an interlocutory appeal pursuant to A.R. 4(B)(6). This she failed to do. As this is not a proper interlocutory appeal under 4(B)(1) and this matter was not certified pursuant to 4(B)(6), this court has no choice but to dismiss the appeal. *Hogan, supra.*

Case dismissed.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs with separate opinion in which SHARPNACK, C.J., concurs.

SULLIVAN, Judge, concurring.

The Authorization for Release of Information ordered by the Hamilton Circuit Court to be signed by the plaintiff Cua is identical to the Authorization for Release of Information ordered by the Montgomery Circuit Court and reviewed by our First District in *Lytle v. Miller,* an unpublished decision in an interlocutory appeal ordered dismissed by our Supreme Court. That order of dismissal, dated June 4, 1992, reads as follows:

"Comes now Appellant, Steven Lytle, by counsel, and files his 'Petition for Transfer.' He asks this Court to reverse the Court of Appeals' memorandum decision filed December 17, 1992, in this cause.

The Court GRANTS Appellant's 'Petition for Transfer.' The Court DISMISSES this interlocutory appeal because it is not authorized by App.R. 4(B)(1) and the requirements of App.R. 4(B)(6) have not been met. *State v. Hogan* (1991), Ind., 582 N.E.2d 824.

The Clerk is directed to send copies of the Order to all counsel of record.

DONE AT INDIANAPOLIS, INDIANA this 4th day of June, 1992.

s/ Randall T. Shepard
RANDALL T. SHEPARD
CHIEF JUSTICE OF INDIANA

All Justices concur except Dickson, J., who would grant transfer but not dismiss the case."[3]

As the majority opinion herein notes, the *Hogan* decision involved a discovery order requiring the production of certain docu-

---

2. The Indiana Supreme Court in an unpublished order dated June 4, 1992, dismissed as not being a proper interlocutory appeal the case of *Lytle v. Miller* (1991), Ind.App., 583 N.E.2d 802, a memorandum decision that dealt with the same issue as this case. Our memorandum opinion in *Lytle* is not cited above because Indiana Rules of Procedure, Appellate Rule 15 (A)(3) provides that "memorandum decisions shall not ... be regarded as precedent nor cited before any court...."

3. In its footnote 2, the majority correctly and appropriately notes that the Court of Appeals Memorandum Decision which treated the merits of the appeal in *Lytle v. Miller* may not be regarded as precedent nor cited to any court. This prohibition contained in App.R. 15 (A)(3) does not, however, relate to unpublished decisions or orders of our Supreme Court or from any court other than the Indiana Court of Appeals. *See Barco Beverage v. Alcoholic Beverage Commission* (1991) 2d Dist. Ind.App., 571 N.E.2d 306.

ments. The documents were in possession of the Attorney General who resisted production of the documents upon grounds that they constituted attorney work product and/or client-attorney privilege. The Supreme Court affirmed the production order stating that Appellate Rule 4(B)(1) is not designed to permit an interlocutory appeal from every order "to produce documents during discovery". 582 N.E.2d at 825. As authority for the holding, the *Hogan* court cited *Greyhound Lines, Inc. v. Vanover* (1974) 2d Dist., 160 Ind.App. 289, 311 N.E.2d 632. The latter case, without discussion or rationale, merely held that a discovery request for production of documents was not appealable under the then existing rule which permitted an interlocutory appeal from an order for the "delivery ... of any ... documents". More enlightening, perhaps, is *Western Union Telegraph Co. v. Locke* (1886) 107 Ind. 9, 7 N.E. 579, as quoted by the majority here. As noted in *Locke,* delivery of a document is more than the production of a document, for "delivery imports a surrender ..." 7 N.E. at 582.

The order involved in this appeal concerns more than production of information. To be sure, the end sought to be achieved by defendants is an ex parte conversation with plaintiff's physicians in the hope or expectation of gaining evidentiary matter for trial. Nevertheless, the order does not direct the production of any document; rather, it orders the execution of an instrument which constitutes the "surrender" of the patient-physician privilege. Moreover it compels this surrender in a setting which does not even permit plaintiff's counsel to be present. It is not an order which, as in *Hogan,* or *Greyhound Lines,* directs the production of documents. Our case involves an order for the "execution of [an] instrument of writing" App.R. 4(B)(1).

Be that as it may, our Supreme Court has in *Lytle, supra,* applied the holding of *Hogan* to an order for the execution of an instrument in writing, which is in anticipation of litigation and which therefore bears a similarity to the discovery orders heretofore discussed. We are bound by the Supreme Court's order in *Lytle* even though

it may appear that a better course would be for that Court to modify the Appellate Rule. I therefore concur in the dismissal of this appeal.

SHARPNACK, C.J., joins in this concurring opinion.