## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 29 2016, 9:30 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

APPELLANT *PRO SE*

Dexter Louis Rogers
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS HOSPITAL A

Mark W. Baeverstad
Jason A. Scheele
Jessica L. Pixler
Rothberg Logan Warsco LLP
Fort Wayne, Indiana

---

IN THE
# COURT OF APPEALS OF INDIANA

---

Dexter Rogers, Individually and as Personal Representative of the Estates of Carrie Bell Rogers and Premius Rogers,

*Appellant/Cross-Appellee/Plaintiff,*

*v.*

Anonymous Physician C,
Anonymous Physician F,
Anonymous Physician L,
Anonymous Medical Provider A,
and Anonymous Hospital A,

*Appellees/Cross-Appellants/Defendants.*

February 29, 2016

Court of Appeals Case No. 02A03-1507-CT-826

Interlocutory Appeal from the Allen Superior Court
The Honorable Nancy Eshcoff Boyer, Special Judge

Trial Court Cause No. 02D03-1401-CT-39

---

**Bradford, Judge.**

# Case Summary

[1] Parkview Health System, Inc., is a healthcare network serving northeastern Indiana, a network that includes Appellee/Cross-Appellant/Defendant Anonymous Hospital A ("the Hospital"). In June of 2011, Carrie Bell Rogers, the mother of Appellant/Cross-Appellee/Plaintiff Dexter Rogers, fell while a patient at the Hospital and died approximately two months later.

[2] In June of 2013, Rogers filed a proposed complaint with the Indiana Department of Insurance ("IDOI") alleging negligence by seventeen health care providers ("the Healthcare Providers") in allowing Carrie to fall and in her post-fall care. As part of the discovery process, Rogers sought to depose Michael J. Packnett, the CEO of Parkview. The Hospital moved for a protective order preventing Rogers from deposing Packnett, which the trial court initially granted. In May of 2015, after a change in trial court judge, the trial court ordered the Hospital to produce Packnett for a deposition. The trial court eventually ordered the Hospital to pay a $160.00 court reporter's fee when it did not produce Packnett for a deposition as ordered.

[3] Meanwhile, Rogers sought information related to an incident report he believes should have been filed with the Indiana Department of Health ("IDOH"). In fact, no such IDOH incident report has been submitted. Rogers, however, became aware of an internal Hospital report submitted into the Hospital's

MIDAS reporting system ("the MIDAS report") and sought to discover it in its entirety. The Hospital responded that the MIDAS report was protected from discovery by the Indiana peer-review statute and, in part, by work-product privilege. The trial court ordered the Hospital to provide Rogers with a redacted copy of the MIDAS report. Rogers appeals, arguing that the trial court abused its discretion in denying him full access to the contents of the MIDAS report. The Hospital responds to Rogers's contention and argues that the trial court abused its discretion in ordering it to produce Packnett for a deposition and provide even a redacted copy of the MIDAS report. We conclude that (1) we do not have jurisdiction to decide the issue of the MIDAS report and (2) the trial court abused its discretion in ordering the Hospital to produce Packnett for a deposition. However, we also conclude that the trial court did not abuse its discretion in sanctioning the Hospital for failing to produce Packnett for a scheduled deposition. Consequently, we reverse in part, affirm in part, and remand with instructions.

## Facts and Procedural History

[4] On June 26, 2011, Carrie was a patient at the Hospital when she fell. Carrie died on August 23, 2011. On June 26, 2013, Rogers, individually and in his capacity as the personal representative of Carrie's estate, filed a proposed complaint with the IDOI alleging negligence by the Healthcare Providers. On March 21, 2014, the Healthcare Providers filed a motion in the trial court for preliminary determination and to dismiss based on Rogers's alleged failure to

timely answer interrogatories or respond to requests for production of documents.

[5] On January 9, 2015, Rogers filed a "Motion to Compel Defendants' Witness for Discovery and to Amend Complaint" in which Rogers sought an order to produce the CEO/owner of Parkview for a deposition and add that person to the list of defendants. On March 2, 2015, the trial court granted the Hospital's motion to quash Rogers's notice of deposition and subpoena *duces tecum* of Packnett and issued a protective order. On March 5, 2015, Rogers moved to remove the trial court judge, Stanley Levine. On March 3, 2015, Judge Levine recused himself, and, on March 27, 2015, the parties agreed to the appointment of Special Judge Nancy Boyer.

[6] Meanwhile, on March 26, 2015, Rogers moved the trial court to reconsider its ruling of March 2, 2015, that he was not entitled to depose Packnett and to certify the question for interlocutory appeal. On April 2, 2015, Rogers moved the trial court to compel discovery, including an "incident report" that he had requested from the Hospital. Appellee's App. p. 163. On April 10, 2015, the Hospital responded that it had, in fact, complied with all outstanding discovery orders and that the only document withheld was an internally-prepared MIDAS report. On April 15, 2015, the Healthcare Providers responded to Rogers's motion to certify the question of Packnett's deposition for interlocutory appeal, arguing that it did not comply with the requirements of Indiana Rule of Appellate Procedure 14(B)(1)(c)(ii).

On May 14, 2015, the trial court held a hearing on all pending motions.  At the hearing, the following exchange occurred:

> THE COURT:     Well, I mean, we're covering the medical records now, we're covering the MIDAS report, we're covering any and all writings, emails, etcetera, about the investigation.  That, I think, from what I've read of your stuff, that's the core thing that you're interested in right now.
>
> ROGERS:   No.  The core–well, the core thing is an item that you already covered and I wasn't willing to–uh, given an opportunity to elaborate on
>
> THE COURT:     What's that?
>
> ROGERS:   And that's deposing the CEO of Parkview Health.  He is the respondeat superior.  He is responsible for the sins of the servants that he oversees.  That's a civil term.  You know that.  So that being said, how can–if he has direct pertinent material evidence that I can ask him questions to get material evidence from–
>
> THE COURT:     Well, what evidence do you think he's going to have that we haven't already covered here?
>
> ROGERS:   Huh, he's the head of the compliance -
>
> THE COURT:     I know what he is.  I'm just asking you a question.  Whatever is produced here that we've covered, do you think there's something else that he has in his hands that wouldn't be written down that we've covered here?
>
> ROGERS:   Yes.
>
> THE COURT:     What?
>
> ROGERS:   How would I–exactly.  That's–
>
> THE COURT:     Well, what would it be?
>
> ROGERS:   I don't know.  That's considered hearsay.  Unless I'm allowed to have the opportunity to depose the individual, we're just talking hypothetics (sic) here.  There is no really legal

basis, there is no logical basis, as to why this person is being so protected like he's some god or something. He's just–he's just a title, you see. How can you have a president of the United States who wasn't exempt from being deposed in the court of law in a sexual case–

THE COURT:     Alright–

ROGERS:    –but we have–

THE COURT:     Alright. No–

ROGERS:    –but we have an individual–

THE COURT:     No, no, no–

ROGERS:    –we have an individual here who's a CEO–

THE COURT:     Mr. Rogers–

ROGERS:    –of a hospital–

THE COURT:     Mr. Rogers. Mr. Rogers–

ROGERS:    What? How come I can't get it on the record?

THE COURT:     We're not going to talk about Clinton in here.

ROGERS:    I'm not talking about Clinton.

THE COURT:     It has nothing to do with this.

ROGERS:    I'm talking about the case. I'm not talking about him specifically. The point is this: he wasn't exempt from discovery and he's the CEO of all fifty states. And I can't depose a CEO of a hospital in little old Fort Wayne, Indiana that nobody knows about.

THE COURT:     I don't care. You know what? Depose him.

ROGERS:    You giving the order I can?

THE COURT:     You pay for the deposition, you can depose him.

ROGERS:    Great. That's what I want. That's what I want.

THE COURT:     You got it.

ROGERS:    Thank you.

COURT REPORTER: Judge, can I just go on the record as saying a lot of what's been said here I'm not getting because Mr. Rogers is speaking over you? Just for my record.

THE COURT: Okay, yes.

ROGERS: I'm sorry. That's passion.

[Counsel for Defendants]: Your Honor, may I be heard on that issue?

THE COURT: What do you want to say?

[Counsel for Defendants]: I will be brief. I think this issue has been argued and ruled upon by the former judge in this case.

THE COURT: You know what? You know what? It's discovery, okay? It's discovery. If it was ruled on before, it can come up again now. It can come up again when this trial takes place. He's going to want to depose him sometime along the line. Whether I think it's irrelevant is irrelevant. Whether it can lead to some discoverable evidence, I don't know. It's certainly tenuous. It's certainly a long shot. Certainly I don't think so, but if that's what Mr. Rogers wants so that we can move this case along, then we'll give it to him.

May 14, 2015, Tr. pp. 27-30.

[8]  On May 15, the trial court denied Rogers's motion to certify a discovery issue for interlocutory appeal but ordered the Healthcare Providers to produce the MIDAS report for *in camera* review. On May 27, 2015, the Hospital filed a motion to reconsider with respect to the Packnett deposition. The Hospital also contended that portions of the MIDAS report were protected by the Indiana peer review statute, attorney-client privilege, and work-product privilege. On June 3, 2015, Rogers moved for sanctions and a rule to show cause because the Hospital had not produced Packnett for a scheduled deposition. On June 19, 2015, the trial court ordered the Hospital to pay a $160.00 court reporter's fee

for failing to produce Packnett for the scheduled deposition. On June 29, 2015, the trial court ordered the Hospital to deliver the MIDAS report, with pages 18 to 23 and a portion of page 10 redacted.

[9] On July 6, 2015, the Hospital filed a notice of appeal and an amended notice of appeal two days later. The Hospital indicated in its notice of appeal that it was taking an appeal as of right from an interlocutory order and from a final judgment. On July 29, 2015, Rogers also filed a notice of appeal, indicating that he was taking an appeal as of right from an interlocutory order. Rogers's contention on appeal is that the trial court abused its discretion in ordering portions of the MIDAS report redacted. The Hospital contends that the trial court abused its discretion in (1) ordering that it make Packnett available for deposition and sanctioning it when he did not attend a scheduled deposition and (2) ordering it to produce *any* portions of the MIDAS report.

# Discussion and Decision

## I. Whether This Court has Jurisdiction Over This Appeal

[10] As an initial matter, we consider the question of whether we have jurisdiction to consider the issues raised in this interlocutory appeal. Although the parties have not raised the issue, we are obligated to raise the question *sua sponte*. *See Jernigan v. State*, 894 N.E.2d 1044, 1046 (Ind. Ct. App. 2008) ("Subject matter jurisdiction cannot be waived, and courts at all levels are required to consider the issue *sua sponte*.").

Subject matter jurisdiction concerns a court's ability to hear and decide a case based on the class of cases to which it belongs. *Warrick County v. Weber,* 714 N.E.2d 685, 687 (Ind. Ct. App. 1999). Whether we have subject matter jurisdiction is an issue we should raise *sua sponte* if the parties do not. *Id.* As we have previously explained, "dismissal for lack of subject matter jurisdiction takes precedence over the determination of and action upon other substantive and procedural rights of the parties." *Id.* (quoting *Gorman v. Northeastern REMC*, 594 N.E.2d 843, 845 (Ind. Ct. App. 1992), *decision clarified on denial of reh'g* 597 N.E.2d 366 (Ind. Ct. App. 1992), *trans. denied*). Jurisdiction is a question of law we review *de novo. Id.*

… Our Rules of Appellate Procedure provide that we have jurisdiction over interlocutory orders only under the conditions described in Appellate Rule 14. Ind. App. R. 5(B). Under App. R. 14, there are three ways we may obtain jurisdiction over an interlocutory appeal: (1) when the right is provided by statute, *see* App. R. 14(C); (2) when the trial court certifies the order and we accept jurisdiction, *see* App. R. 14(B); or (3) when the order is one of the nine enumerated types that may be appealed "as a matter of right," *see* App. R. 14(A).

*Young v. Estate of Sweeney*, 808 N.E.2d 1217, 1219-20 (Ind. Ct. App. 2004).

[11] Here, the parties have not pointed us to any statute that applies, and the trial court certified neither question raised for interlocutory appeal. Consequently, if either of the issues in this appeal are properly before us, it is because it is in one of the enumerated categories of appeal as a matter of right.

## A. Packnett Deposition

[12] As previously mentioned, the Hospital was essentially sanctioned $160.00 for failure to deliver Packnett to a scheduled deposition. Appellate Rule 14(A)(1) provides that "[a]ppeals from the following interlocutory orders are taken as a

matter of right … (1) For the payment of money[.]"  While we have held that expenses incurred complying with discovery orders do not satisfy Appellate Rule 14(A)(1), *Allstate Ins. Co. v. Scroghan*, 801 N.E.2d 191, 194 (Ind. Ct. App. 2004), *trans. denied* ("*Scroghan I*"), the Hospital here was sanctioned, which, under Indiana precedent, is different.  In a later appeal in the same *Scroghan* case, we held that a sanction imposed for violating a discovery order did, in fact, give the party an interlocutory appeal for the "payment of money."  *See Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 322 (Ind. Ct. App. 2006) ("*Scroghan II*") ("In such situations, if a party is willing to incur possibly serious sanctions to obtain review of a discovery order, then the option should be available.").  Moreover, the *Scroghan II* court further concluded that the appeal as of right extended to the propriety not only of the sanction but also of the underlying discovery order.  *See id*.  Pursuant to *Scroghan II*, we have jurisdiction to hear the Hospital's argument with regard to the trial court's order that it produce Packnett for a deposition.

## B.  The MIDAS Report

[13]   The second issue raised by the parties involves the discoverability of the MIDAS report, with the Hospital arguing that it is not discoverable and Rogers arguing that it should be not redacted, as the trial court ordered.  Review of the nine categories listed in Appellate Rule 14(A) reveals only subsection (3) as a possible basis for an interlocutory appeal as of right, as the trial court's order

arguably involves the "delivery of a document."[1] The *Scroghan I* court, however, held that the mere delivery of a document does not satisfy Appellate Rule 14(A)(3):

> Rule 14(A)(3) pertains to the delivery of documents where "'delivery imports a surrender.'" *Cua v. Morrison*, 600 N.E.2d 951, 955 (Ind. Ct. App. 1992) (Sullivan, J. concurring) (quoting *W. Union Tel. Co. v. Locke*, 107 Ind. 9, 7 N.E. 579, 582 (1886)), *trans. denied.* Surrender may occur with such items as securities, receipts, deeds, leases, or promissory notes. *See, e.g.*, *Koch v. James*, 616 N.E.2d 759, 760-61 (Ind. Ct. App. 1993) (delivery of stocks), *reh'g denied, trans. denied; see also W. Union Tel.*, 7 N.E. at 582. "'It is easy to see that the administration of justice might be seriously embarrassed, and vexatious delays secured, if appeals could be taken in every case where a written instrument is ordered to be produced for use as evidence on the trial of the cause.'" *Cua*, 600 N.E.2d at 953 (quoting *W. Union Tel.*, 7 N.E. at 582). Thus, in order to seek an interlocutory appeal as of right for the delivery of a document under Rule 14(A)(3), we find that the delivery of the document must import a surrender of the document.

---

[1] Appellate Rule 14(A) lists the following nine categories of orders that give rise to interlocutory appeals as of right:

(1) For the payment of money;
(2) To compel the execution of any document;
(3) To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;
(4) For the sale or delivery of the possession of real property;
(5) Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;
(6) Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;
(7) For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;
(8) Transferring or refusing to transfer a case under Trial Rule 75; and
(9) Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.

*Scroghan I*, 801 N.E.2d at 194. Because there is clearly no surrender of the MIDAS report occurring in this case, Appellate Rule 14(A)(3) does not apply. Consequently, we conclude that we do not have jurisdiction to hear the parties' claims regarding the MIDAS report.

## II. Whether the Trial Court Abused its Discretion in Allowing Rogers to Depose Packnett

The Hospital contends that the trial court abused its discretion in ordering it to produce Packnett for a deposition.

> The grant or denial of a discovery motion is within the trial court's discretion and will be overturned only for an abuse of discretion. *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1170 (Ind. Ct. App. 1995), *reh'g denied.* An abuse of discretion in this context occurs only if the order is unreasonable in light of all of the attendant circumstances and is prejudicial to a party's rights. *Cua v. Morrison*, 626 N.E.2d 581, 583 (Ind. Ct. App. 1993), *adopted*, 636 N.E.2d 1248 (Ind. 1994).

*Andreatta v. Hunley*, 714 N.E.2d 1154, 1156 (Ind. Ct. App. 1999), *trans. denied*.

Indiana Trial Rule 26(B)(1) provides that

> Parties may obtain discovery regarding any matter, not privileged, *which is relevant to the subject-matter involved in the pending action*, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the

trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought or; (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(C).

(Emphasis added).

[16] Under the circumstances of this case, we conclude that the trial court abused its discretion in allowing Rogers to depose Packnett. At a minimum, the discovery sought must concern a matter "which is relevant to the subject-matter involved in the pending action[,]" and Rogers has failed to suggest, much less establish, that Packnett could provide any information relevant to Rogers's claim. Indeed, when asked what information he thought Packnett might be able to provide if deposed, Rogers responded, "I don't know" and admitted that "we're just talking hypothetics (sic) here." May 14, 2015, Tr. p. 28.

[17] The Hospital argued in a hearing on its motion to quash Rogers's subpoena of Packnett that he had no information regarding Carrie's medical care or the allegedly deficient reporting systems, was not the supervisor of any physician or other staff member involved in Carrie's care, was not the supervisor of the

Hospital's Director of Quality and Accreditation, and has no role in filing incident reports with IDOH. Rogers does not dispute any of this, arguing, it seems, that as CEO of Parkview, he is ultimately responsible for everything that occurs in any of its facilities. Responsibility is not knowledge, however. In short, there is not the slightest indication that Packnett had anything to do with Carrie's treatment or would be able to provide any relevant information about it.[2] We reverse the trial court's order allowing Rogers to depose Packnett.

## III. Sanction Against the Hospital

[18] Finally, we turn to the $160.00 sanction the trial court imposed against the Hospital for failing to produce Packnett for a scheduled deposition.

> We assign the selection of an appropriate sanction for a discovery violation to the trial court's sound discretion. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175 (Ind. 1993). Trial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation. We therefore review a trial court's sanction only for an abuse of its discretion. *Id.* at 180-81.

*Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012).

---

[2] The trial court seemed to recognize the lack of merit in Rogers's request, noting that it was "certainly tenuous" and "certainly a long shot." May 14, 2015, Tr. p. 30. Nonetheless, the trial court granted Rogers's request to depose Packnett, reasoning that "if that's what Mr. Rogers wants so that we can move this case along, then we'll give it to him." May 14, 2015, Tr. p. 30. While we sympathize with the trial court, we cannot endorse the granting of discovery requests seemingly on the basis of expediency and nothing else.

[19] We have already concluded that the trial court abused its discretion for ordering the Hospital to produce Packnett for a deposition. That said, the Hospital was under court order to produce Packnett and, although there was a pending motion to reconsider before the trial court, no stay or protective order had been secured while the trial court evaluated the motion. Even though we eventually ruled in the Hospital's favor on the merits, we do not wish to encourage the violation of direct court orders by reversing the trial court's sanction order. We therefore affirm the trial court's order that the Hospital pay a $160.00 court reporter's fee for failing to produce Packnett for a scheduled deposition.

## Conclusion

[20] We conclude that we do not have jurisdiction to address the parties' arguments regarding the MIDAS reports and that the trial court abused its discretion in ordering the Hospital to produce Packnett for a deposition. However, we nonetheless conclude that the trial court did not abuse its discretion in imposing a $160.00 sanction against the Hospital for failing to produce Packnett for a scheduled deposition. Consequently, the trial court's order regarding the MIDAS report and the sanction against the Hospital remain in place. We reverse the trial court's order that the Hospital produce Packnett for a deposition and remand with instructions to reinstate the order to quash Rogers's subpoena and protective order.

[21] We reverse the judgment of the trial court in part, affirm in part, and remand with instructions.

Baker, J., and Pyle, J., concur.